# SANDSTROM *v.* MONTANA

No. 78–5384.   Argued April 18, 1979—Decided June 18, 1979

Brennan, J., delivered the opinion for a unanimous Court. Rehn-quist, J., filed a concurring opinion, in which Burger, C. J., joined, *post,* p. 527.

*Byron W. Boggs,* by appointment of the Court, 439 U. S. 1126, argued the cause and filed a brief for petitioner.

*Michael T. Greely,* Attorney General of Montana, argued the cause for respondent. With him on the brief were *Mike McCarter* and *Denny Moreen,* Assistant Attorneys General, and *John Radonich.*

Mr. Justice Brennan delivered the opinion of the Court.

The question presented is whether, in a case in which intent is an element of the crime charged, the jury instruction, "the law presumes that a person intends the ordinary consequences of his voluntary acts," violates the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt.

## I

On November 22, 1976, 18-year-old David Sandstrom confessed to the slaying of Annie Jessen. Based upon the confession and corroborating evidence, petitioner was charged on December 2 with "deliberate homicide," Mont. Code Ann. § 45-5-102 (1978), in that he "purposely or knowingly caused the death of Annie Jessen." App. 3.[1] At trial, Sandstrom's attorney informed the jury that, although his client admitted killing Jessen, he did not do so "purposely or knowingly," and was therefore not guilty of "deliberate homicide" but of a lesser crime. Id., at 6–8. The basic support for this contention was the testimony of two court-appointed mental health experts, each of whom described for the jury petitioner's mental state at the time of the incident. Sandstrom's attorney argued that this testimony demonstrated that petitioner, due to a personality disorder aggravated by alcohol consumption, did not kill Annie Jessen "purposely or knowingly." [2]

---

[1] The statute provides:

"45-5-101. Criminal homicide. (1) A person commits the offense of criminal homicide if he purposely, knowingly, or negligently causes the death of another human being.

"(2) Criminal homicide is deliberate homicide, mitigated deliberate homicide, or negligent homicide.

"45-5-102. Deliberate homicide. (1) Except as provided in 45-5-103 (1), criminal homicide constitutes deliberate homicide if:

"(a) it is committed purposely or knowingly . . . ."

[2] Petitioner initially filed a notice of intent to rely on "mental disease or defect excluding criminal responsibility" as a defense. That defense

The prosecution requested the trial judge to instruct the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." Petitioner's counsel objected, arguing that "the instruction has the effect of shifting the burden of proof on the issue of" purpose or knowledge to the defense, and that "that is impermissible under the Federal Constitution, due process of law." *Id.,* at 34. He offered to provide a number of federal decisions in support of the objection, including this Court's holding in *Mullaney* v. *Wilbur,* 421 U. S. 684 (1975), but was told by the judge: "You can give those to the Supreme Court. The objection is overruled." App. 34. The instruction was delivered, the jury found petitioner guilty of deliberate homicide, *id.,* at 38, and petitioner was sentenced to 100 years in prison.

Sandstrom appealed to the Supreme Court of Montana, again contending that the instruction shifted to the defendant the burden of disproving an element of the crime charged, in violation of *Mullaney* v. *Wilbur, supra, In re Winship,* 397 U. S. 358 (1970), and *Patterson* v. *New York,* 432 U. S. 197 (1977). The Montana court conceded that these cases did prohibit shifting the burden of proof to the defendant by means of a presumption, but held that the cases "do not prohibit allocation of *some* burden of proof to a defendant under certain circumstances." 176 Mont. 492, 497, 580 P. 2d 106, 109 (1978). Since in the court's view, "[d]efendant's sole burden under instruction No. 5 was to produce *some* evidence that he did not intend the ordinary consequences of his voluntary acts, not to disprove that he acted 'purposely' or 'knowingly,' . . . the instruction does not violate due process

---

required evidence that defendant was "unable either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Mont. Code Ann. § 46–14–101 (1978). The defense was withdrawn at trial, with the petitioner contending that, although he was not "unable" to form the requisite intent, he did not have it at the time of the killing.

standards as defined by the United States or Montana Constitution . . . ." *Ibid.* (emphasis added).

Both federal and state courts have held, under a variety of rationales, that the giving of an instruction similar to that challenged here is fatal to the validity of a criminal conviction.[3] We granted certiorari, 439 U. S. 1067 (1979), to decide the important question of the instruction's constitutionality. We reverse.

## II

The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes. See *Ulster County Court* v. *Allen, ante,* at 157–163. That determination requires careful attention to the words actually spoken to the jury, see *ante,* at 157–159, n. 16, for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction.

Respondent argues, first, that the instruction merely described a permissive inference—that is, it allowed but did not require the jury to draw conclusions about defendant's intent from his actions—and that such inferences are constitutional. Brief for Respondent 3, 15. These arguments need not detain us long, for even respondent admits that "it's possible" that

---

[3] See *Chappell* v. *United States,* 270 F. 2d 274 (CA9 1959); *Bloch* v. *United States,* 221 F. 2d 786 (CA9 1955); *Berkovitz* v. *United States,* 213 F. 2d 468 (CA5 1954); *Wardlaw* v. *United States,* 203 F. 2d 884 (CA5 1953); *State* v. *Warbritton,* 211 Kan. 506, 506 P. 2d 1152 (1973); *Hall* v. *State,* 49 Ala. App. 381, 385, 272 So. 2d 590, 593 (Crim. App. 1973). See also *United States* v. *Wharton,* 139 U. S. App. D. C. 293, 433 F. 2d 451 (1970). In addition, two United States Courts of Appeals have ordered their District Courts to delete the instruction in future cases. See *United States* v. *Garrett,* 574 F. 2d 778 (CA3 1978); *United States* v. *Chiantese,* 560 F. 2d 1244 (CA5 1977). The standard reference work for federal instructions, 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions 405 (3d ed. 1977), describes the instruction as "clearly erroneous," and as constituting "reversible error," *id.,* at 448.

the jury believed they were required to apply the presumption. Tr. of Oral Arg. 28. Sandstrom's jurors were told that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." They were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory. See generally *United States* v. *Wharton*, 139 U. S. App. D. C. 293, 298, 433 F. 2d 451, 456 (1970); *Green* v. *United States*, 132 U. S. App. D. C. 98, 99, 405 F. 2d 1368, 1369 (1968). See also Montana Rule of Evidence 301 (a).[4]

In the alternative, respondent urges that, even if viewed as a mandatory presumption rather than as a permissive inference, the presumption did not conclusively establish intent but rather could be rebutted. On this view, the instruction required the jury, if satisfied as to the facts which trigger the presumption, to find intent *unless* the defendant offered evidence to the contrary. Moreover, according to the State, all the defendant had to do to rebut the presumption was produce "some" contrary evidence; he did not have to "prove" that he lacked the required mental state. Thus, "[a]t most, it placed a *burden of production* on the petitioner," but "did not shift to petitioner the *burden of persuasion* with respect to any element of the offense . . . ." Brief for Respondent 3 (emphasis added). Again, respondent contends that presumptions with this limited effect pass constitutional muster.

We need not review respondent's constitutional argument on this point either, however, for we reject this characterization of the presumption as well. Respondent concedes there is a "risk" that the jury, once having found petitioner's act

---

[4] "Rule 301. (a) Presumption defined. A presumption is an assumption of fact *that the law requires to be made* from another fact or group of facts found or otherwise established in the action or proceeding." (Emphasis added.)

voluntary, would interpret the instruction as automatically directing a finding of intent. Tr. of Oral Arg. 29. Moreover, the State also concedes that numerous courts "have differed as to the effect of the presumption when given as a jury instruction without further explanation as to its use by the jury," and that some have found it to shift more than the burden of production, and even to have conclusive effect. Brief for Respondent 17. Nonetheless, the State contends that the only authoritative reading of the effect of the presumption resides in the Supreme Court of Montana. And the State argues that by holding that "[d]efendant's sole burden under instruction No. 5 was to produce *some* evidence that he did not intend the ordinary consequences of his voluntary acts, not to disprove that he acted 'purposely' or 'knowingly,'" 176 Mont., at 497–498, 580 P. 2d, at 109 (emphasis added), the Montana Supreme Court decisively established that the presumption at most affected only the burden of going forward with evidence of intent—that is, the burden of production.[5]

The Supreme Court of Montana is, of course, the final authority on the legal weight to be given a presumption under Montana law, but it is not the final authority on the interpre-

---

[5] For purposes of argument, we accept respondent's definition of the production burden when applied to a defendant in a criminal case. We note, however, that the burden is often described quite differently when it rests upon the prosecution. See *United States* v. *Vuitch*, 402 U. S. 62, 72 n. 7 (1971) ("evidence from which a jury could find a defendant guilty beyond a reasonable doubt"); C. McCormick, Evidence § 338, p. 790, and n. 33 (2d ed. 1972), p. 101, and n. 34.1 (Supp. 1978). We also note that the effect of a failure to meet the production burden is significantly different for the defendant and prosecution. When the prosecution fails to meet it, a directed verdict in favor of the defense results. Such a consequence is not possible upon a defendant's failure, however, as verdicts may not be directed against defendants in criminal cases. *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 572–573 (1977); *Carpenters* v. *United States*, 330 U. S. 395, 408 (1947); *Mims* v. *United States*, 375 F. 2d 135, 148 (CA5 1967).

tation which a jury could have given the instruction. If Montana intended its presumption to have only the effect described by its Supreme Court, then we are convinced that a reasonable juror could well have been misled by the instruction given, and could have believed that the presumption was not limited to requiring the defendant to satisfy only a burden of production. Petitioner's jury was told that "[*t*]*he law presumes* that a person intends the ordinary consequences of his voluntary acts." They were not told that the presumption could be rebutted, as the Montana Supreme Court held, by the defendant's simple presentation of "some" evidence; nor even that it could be rebutted at all. Given the common definition of "presume" as "to suppose to be true without proof," Webster's New Collegiate Dictionary 911 (1974), and given the lack of qualifying instructions as to the legal effect of the presumption, we cannot discount the possibility that the jury may have interpreted the instruction in either of two more stringent ways.

First, a reasonable jury could well have interpreted the presumption as "conclusive," that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their "ordinary" consequences), unless *the defendant* proved the contrary by some quantum of proof which may well have been considerably greater than "some" evidence—thus effectively shifting the burden of persuasion on the element of intent. Numerous federal and state courts have warned that instructions of the type given here can be interpreted in just these ways. See generally *United States* v. *Wharton,* 139 U. S. App. D. C. 293, 433 F. 2d 451 (1970); *Berkovitz* v. *United States,* 213 F. 2d 468 (CA5 1954); *State* v. *Roberts,* 88 Wash. 2d 337, 341–342, 562 P. 2d 1259, 1261–1262 (1977) (en banc); *State* v. *War-*

*britton,* 211 Kan. 506, 509, 506 P. 2d 1152, 1155 (1973); *Hall* v. *State,* 49 Ala. App. 381, 385, 272 So. 2d 590, 593 (Crim. App. 1973). See also *United States* v. *Chiantese,* 560 F. 2d 1244, 1255 (CA5 1977). And although the Montana Supreme Court held to the contrary in this case, Montana's own Rules of Evidence expressly state that the presumption at issue here may be overcome only "by a preponderance of evidence contrary to the presumption." Montana Rule of Evidence 301 (b)(2).[6] Such a requirement shifts not only the burden of production, but also the ultimate burden of persuasion on the issue of intent.[7]

---

[6] Montana Code Ann. § 26–1–602 (1978) states:

" '[D]isputable presumptions' . . . may be controverted by other evidence. The following are of that kind:

.    .    .    .    .

"3. that a person intends the ordinary consequence of his voluntary act." Montana Rule of Evidence 301 provides:

"(b)(2) All presumptions, other than conclusive presumptions, are disputable presumptions and may be controverted. *A disputable presumption may be overcome by a preponderance of evidence contrary to the presumption. Unless the presumption is overcome, the trier of fact must find the assumed fact in accordance with the presumption."* (Emphasis added.)

See also *Monaghan* v. *Standard Motor Co.,* 96 Mont. 165, 173–174, 29 P. 2d 378, 379–380 (1934). At oral argument, the Attorney General of Montana agreed that "admittedly Montana law . . . states that a presumption requires a person to overcome that presumption by a preponderance of evidence." Tr. of Oral Arg. 30.

We do not, of course, cite this Rule of Evidence to dispute the Montana Supreme Court's interpretation of its own law. It merely serves as evidence that a reasonable man—here, apparently, the drafter of Montana's own Rules of Evidence—could interpret the presumption at issue in this case as shifting to the defendant the burden of proving his innocence by a preponderance of the evidence.

[7] The potential for these interpretations of the presumption was not removed by the other instructions given at the trial. It is true that the jury was instructed generally that the accused was presumed innocent until proved guilty, and that the State had the burden of proving beyond a reasonable doubt that the defendant caused the death of the deceased

We do not reject the possibility that some jurors may have interpreted the challenged instruction as permissive, or, if mandatory, as requiring only that the defendant come forward with "some" evidence in rebuttal. However, the fact that a reasonable juror could have given the presumption conclusive or persuasion-shifting effect means that we cannot discount the possibility that Sandstrom's jurors actually did proceed upon one or the other of these latter interpretations. And that means that unless these kinds of presumptions are constitutional, the instruction cannot be adjudged valid.[8]  *Ulster County Court* v. *Allen, ante,* at 159–160, n. 17, and at 175–176 (POWELL, J., dissenting); *Bachellar* v. *Maryland,* 397 U. S. 564, 570–571 (1970); *Leary* v. *United States,* 395 U. S. 6, 31–32 (1969); *Carpenters* v. *United States,* 330 U. S. 395, 408–409 (1947); *Bollenbach* v. *United States,* 326 U. S. 607, 611–614 (1946). It is the line of cases urged by petitioner, and exemplified by *In re Winship,* 397 U. S. 358 (1970), that provides the appropriate mode of constitutional analysis for these kinds of presumptions.[9]

purposely or knowingly. App. 34–35; Brief for Respondent 21. But this is not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied. For example, if the presumption were viewed as conclusive, the jury could have believed that, although intent must be proved beyond a reasonable doubt, proof of the voluntary slaying and its ordinary consequences constituted proof of intent beyond a reasonable doubt. Cf. *Mullaney* v. *Wilbur,* 421 U. S. 684, 703 n. 31 (1975) ("These procedural devices require (in the case of a presumption) . . . the trier of fact to conclude that the prosecution has met its burden of proof with respect to the presumed . . . fact by having satisfactorily established other facts").

[8] Given our ultimate result in this case, we do not need to consider what kind of constitutional analysis would be appropriate for other kinds of presumptions.

[9] Another line of our cases also deals with the validity of certain kinds of presumptions. See *Ulster County Court* v. *Allen, ante,* p. 140; *Barnes* v. *United States,* 412 U. S. 837 (1973); *Turner* v. *United States,* 396

## III

In *Winship,* this Court stated:

> "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt *of every fact* necessary to constitute the crime with which he is charged." *Id.,* at 364 (emphasis added).

Accord, *Patterson* v. *New York,* 432 U. S., at 210. The petitioner here was charged with and convicted of deliberate homicide, committed purposely or knowingly, under Mont. Code Ann. § 45–5–102 (a) (1978). See App. 3, 42. It is clear that under Montana law, whether the crime was committed purposely or knowingly is a fact necessary to constitute the crime of deliberate homicide.[10] Indeed, it was

U. S. 398 (1970); *Leary* v. *United States,* 395 U. S. 6 (1969); *United States* v. *Romano,* 382 U. S. 136 (1965); *United States* v. *Gainey,* 380 U. S. 63 (1965); *Roviaro* v. *United States,* 353 U. S. 53 (1957); *Tot* v. *United States,* 319 U. S. 463 (1943). These cases did not, however, involve presumptions of the conclusive or persuasion-shifting variety. See *Ulster County Court* v. *Allen, ante,* at 157, and n. 16; and at 169 (POWELL, J., dissenting); *Mullaney* v. *Wilbur, supra,* at 703 n. 31; *Leary* v. *United States, supra,* at 35; *Roviaro* v. *United States, supra,* at 63; C. McCormick, Evidence 831 (2d ed. 1972).

A line of even older cases urged upon us by respondent is equally inapplicable. In *Agnew* v. *United States,* 165 U. S. 36, 50 (1897), the trial court's instruction expressly stated that the presumption was not conclusive, and this Court found that other problems with the instruction were cured by the charge considered as a whole. The other proffered cases simply involved general comments by the Court upon the validity of presuming intent from action. See *Radio Officers* v. *NLRB,* 347 U. S. 17, 45 (1954); *Cramer* v. *United States,* 325 U. S. 1, 31 (1945). See also *Reynolds* v. *United States,* 98 U. S. 145, 167 (1879) (religious objection to polygamy law not a defense).

[10] The statute is set out at n. 1, *supra.* In *State* v. *McKenzie,* 177 Mont. 280, 327–328, 581 P. 2d 1205, 1232 (1978), the Montana Supreme Court stated:

"In Montana, a person commits the offense of deliberate homicide if

the lone element of the offense at issue in Sandstrom's trial, as he confessed to causing the death of the victim, told the jury that knowledge and purpose were the only questions he was controverting, and introduced evidence solely on those points. App. 6–8. Moreover, it is conceded that proof of defendant's "intent" would be sufficient to establish this element.[11] Thus, the question before this Court is whether the challenged jury instruction had the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of petitioner's state of mind. We conclude that under either of the two possible interpretations of the instruction set out above, precisely that effect would result, and that the instruction therefore represents constitutional error.

We consider first the validity of a conclusive presumption. This Court has considered such a presumption on at least two prior occasions. In *Morissette* v. *United States,* 342 U. S. 246 (1952), the defendant was charged with willful and knowing theft of Government property. Although his attorney argued that for his client to be found guilty, "the taking must have been with felonious intent," the trial judge ruled that "[t]hat is presumed by his own act." *Id.,* at 249. After first concluding that intent was in fact an element of the crime charged, and after declaring that "[w]here intent of the ac-

he purposely or knowingly causes the death of another human being. Sections 94–5–102 (1)(a), 94–5–101 (1), R. C. M. 1947. *The statutorily defined elements of the offense,* each of which the State must prove beyond a reasonable doubt, *are therefore causing the death of another human being with the knowledge* that you are causing *or with the purpose* to cause the death of that human being." (Emphasis added.)

Accord, *State* v. *Collins,* 178 Mont. 36, 45, 582 P. 2d 1179, 1184 (1978) ("committing the homicide 'purposely or knowingly' is an element of deliberate homicide").

[11] Respondent agrees that "intent" and "purpose" are roughly synonymous, see also Webster's New Collegiate Dictionary 601 (1974), but contests the relevance of "intent" to "knowledge." See Tr. of Oral Arg. 18; Brief for Respondent 8–9. This problem is discussed in Part IV, *infra.*

cused is an ingredient of 'the crime charged, its existence is . . . a jury issue," *Morissette* held:

> "*It follows that the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act.* It often is tempting to cast in terms of a 'presumption' a conclusion which a court thinks probable from given facts. . . . [But] [w]e think presumptive intent has no place in this case. *A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense.* A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, *this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime.*" *Id.,* at 274–275. (Emphasis added; footnote omitted.)

Just last Term, in *United States* v. *United States Gypsum Co.,* 438 U. S. 422 (1978), we reaffirmed the holding of *Morissette.* In that case defendants, who were charged with criminal violations of the Sherman Act, challenged the following jury instruction:

> "The law presumes that a person intends the necessary and natural consequences of his acts. Therefore, if the effect of the exchanges of pricing information was to raise, fix, maintain, and stabilize prices, then the parties to them are presumed, as a matter of law, to have intended that result." 438 U. S., at 430.

After again determining that the offense included the element of intent, we held:

> "[A] defendant's state of mind or *intent is an element of a criminal antitrust offense which . . . cannot be taken from the trier of fact through reliance on a legal presumption* of wrongful intent from proof of an effect on prices. Cf. *Morissette* v. *United States . . . .*
>
> .　　　　.　　　　.　　　　.　　　　.
>
> "Although an effect on prices may well support an inference that the defendant had knowledge of the probability of such a consequence at the time he acted, the jury must remain free to consider additional evidence before accepting or rejecting the inference. . . . [U]ltimately the decision on the issue of intent must be left to the trier of fact alone. The instruction given invaded this factfinding function." *Id.,* at 435, 446 (emphasis added).

See also *Hickory* v. *United States,* 160 U. S. 408, 422 (1896).

As in *Morissette* and *United States Gypsum Co.,* a conclusive presumption in this case would "conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime," and would "invade [the] factfinding function" which in a criminal case the law assigns solely to the jury. The instruction announced to David Sandstrom's jury may well have had exactly these consequences. Upon finding proof of one element of the crime (causing death), and of facts insufficient to establish the second (the voluntariness and "ordinary consequences" of defendant's action), Sandstrom's jurors could reasonably have concluded that they were directed to find against defendant on the element of intent. The State was thus not forced to prove "beyond a reasonable doubt . . . every fact necessary to constitute the crime . . . charged," 397 U. S., at 364, and defendant was deprived of his constitutional rights as explicated in *Winship.*

A presumption which, although not conclusive, had the effect of shifting the burden of persuasion to the defendant, would have suffered from similar infirmities. If Sandstrom's jury interpreted the presumption in that manner, it could have concluded that upon proof by the State of the slaying, and of additional facts not themselves establishing the element of intent, the burden was shifted to the defendant to prove that he lacked the requisite mental state. Such a presumption was found constitutionally deficient in *Mullaney* v. *Wilbur*, 421 U. S. 684 (1975). In *Mullaney*, the charge was murder, which under Maine law required proof not only of intent but of malice. The trial court charged the jury that " 'malice aforethought is an essential and indispensable element of the crime of murder.' " *Id.*, at 686. However, it also instructed that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation. *Ibid.* As we recounted just two Terms ago in *Patterson* v. *New York*, "[t]his Court . . . unanimously agreed with the Court of Appeals that Wilbur's due process rights had been invaded by the presumption casting upon him the burden of proving by a preponderance of the evidence that he had acted in the heat of passion upon sudden provocation." 432 U. S., at 214. And *Patterson* reaffirmed that "a State must prove every ingredient of an offense beyond a reasonable doubt, and . . . may not shift the burden of proof to the defendant" by means of such a presumption. *Id.*, at 215.

Because David Sandstrom's jury may have interpreted the judge's instruction as constituting either a burden-shifting presumption like that in *Mullaney*, or a conclusive presumption like those in *Morissette* and *United States Gypsum Co.*, and because either interpretation would have deprived defendant of his right to the due process of law, we hold the instruction given in this case unconstitutional.

## IV

Respondent has proposed two alternative rationales for affirming petitioner's conviction, even if the presumption at issue in this case is unconstitutional. First, the State notes that the jury was instructed that deliberate homicide may be committed "purposely *or knowingly*." [12] App. 35 (emphasis added). Since the jury was also instructed that a person "intends" the ordinary consequences of his voluntary acts, but was not provided with a definition of "intends," respondent argues that jurors could have interpreted the word as referring only to the defendant's "purpose." Thus, a jury which convicted Sandstrom solely for his "knowledge," and which interpreted "intends" as relevant only to "purpose", would not have needed to rely upon the tainted presumption at all.

We cannot accept respondent's argument. As an initial matter, we are not at all certain that a jury would interpret the word "intends" as bearing solely upon purpose. As we said in *United States* v. *United States Gypsum Co.*, 438 U. S., at 445, "[t]he element of intent in the criminal law has tradi-

---

[12] The jurors were instructed:

"INSTRUCTION NO. 7

" 'Knowingly' is defined as follows: A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence. Equivalent terms such as 'knowing' or 'with knowledge' have the same meaning.

"INSTRUCTION NO. 8

" 'Purposely' is defined as follows: A person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is his conscious object to engage in that conduct or to cause that result." App. 35–36.

tionally been viewed as a bifurcated concept embracing either the specific requirement of purpose or the more general one of knowledge or awareness." See also W. LaFave & A. Scott, Criminal Law 196 (1972).

But, more significantly, even if a jury *could* have ignored the presumption and found defendant guilty because he acted knowingly, we cannot be certain that this is what they *did* do.[13] As the jury's verdict was a general one, App. 38, we have no way of knowing that Sandstrom was not convicted on the basis of the unconstitutional instruction. And "[i]t has long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside. See, *e. g.*, *Stromberg* v. *California*, 283 U. S. 359 (1931)." *Leary* v. *United States*, 395 U. S., at 31–32. See *Ulster County Court* v. *Allen, ante,* at 159–160, n. 17, and at 175–176 (POWELL, J., dissenting); *Bachellar* v. *Maryland,* 397 U. S., at 570–571; *Carpenters* v. *United States,* 330 U. S., at 408–409; *Bollenbach* v. *United States,* 326 U. S., at 611–614.

Respondent's final argument is that even if the jury did rely upon the unconstitutional instruction, this constituted harmless error under *Chapman* v. *California,* 386 U. S. 18 (1967), because both defendant's confession and the psychiatrist's testimony demonstrated that Sandstrom possessed the requisite mental state. Brief for Respondent 4–13. In reply, it is said that petitioner confessed only to the slaying and not to his mental state, that the psychiatrist's testimony amply supported his defense, Brief for Petitioner 15–16, and that in any event an unconstitutional jury instruction on an element of the crime can never constitute harmless error, see generally

---

[13] Indeed, with respondent's interpretation of "intends" as going solely to "purpose," it would be surprising if the jury considered "knowledge" before it considered "purpose." With the assistance of the presumption, the latter would have been easier to find than the former, and there is no reason to believe the jury would have deliberately undertaken the more difficult task.

*Carpenters* v. *United States, supra,* at 408–409; *Bollenbach* v. *United States, supra,* at 614, 615. As none of these issues was considered by the Supreme Court of Montana, we decline to reach them as an initial matter here. See *Moore* v. *Illinois,* 434 U. S. 220, 232 (1977); *Coleman* v. *Alabama,* 399 U. S. 1, 11 (1970). The Montana court will, of course, be free to consider them on remand if it so desires. *Ibid.* Accordingly, the judgment of the Supreme Court of Montana is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

Mr. Justice Rehnquist, with whom The Chief Justice joins, concurring.

The Fourteenth Amendment to the United States Constitution prohibits any State from depriving a person of liberty without due process of law, and in *Mullaney* v. *Wilbur,* 421 U. S. 684 (1975), this Court held that the Fourteenth Amendment's guarantees prohibit a State from shifting to the defendant the burden of disproving an element of the crime charged. I am loath to see this Court go into the business of parsing jury instructions given by state trial courts, for as we have consistently recognized, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp* v. *Naughten,* 414 U. S. 141, 146–147 (1973). And surely if this charge had, in the words of the Court, "merely described a permissive inference," *ante,* at 514, it could not conceivably have run afoul of the constitutional decisions cited by the Court in its opinion. But a majority of my Brethren conclude that "it is clear that a reasonable juror could easily have viewed such an instruction as mandatory," *ante,* at 515, and counsel for the State admitted in oral argument "that 'it's possible' that the jury believed they were required to apply the presumption." *Ante,* at 514–515.

While I continue to have doubts as to whether this particular jury was so attentively attuned to the instructions of the trial court that it divined the difference recognized by lawyers between "infer" and "presume," I defer to the judgment of the majority of the Court that this difference in meaning may have been critical in its effect on the jury. I therefore concur in the Court's opinion and judgment.