Melvin DLUGASH, Petitioner,

v.

The PEOPLE OF the STATE OF NEW YORK, Eugene Gold, District Attorney of Kings County, Robert Abrams, Attorney General of the State of New York, the New York State Department of Correctional Services and the Warden of the Facility to Which the Petitioner is to be Remanded, Respondents.

No. 79 C 2048.

United States District Court, E. D. New York.

Sept. 10, 1979.

Alan M. Dershowitz, Jeffrey R. Cohen, New York City, for petitioner.

Eugene Gold, Dist. Atty. of Kings County, Brooklyn, N. Y. (Michael J. Halberstam, Asst. Dist. Atty., Brooklyn, N. Y., of counsel), for respondents.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Petitioner Melvin Dlugash applies for a writ of habeas corpus asserting that his conviction in the New York State Courts for attempted murder violated his right to due process under the Fourteenth Amendment.

Dlugash was indicted on January 9, 1974 in Kings County for the murder of Michael Geller. Although charged with acting in concert with one Joseph Bush, Dlugash was tried alone.

At the trial the only evidence describing Geller's death was Dlugash's statement to the police. According to that statement he and Bush were at Geller's home on the night of December 21, 1973, all three having been out drinking. During the course of the evening Bush had carried on a heated argument with Geller concerning money and had made frequent threats to shoot him. Finally in the early morning of December 22, 1973, Bush pulled out a pistol and fired three shots into Geller's chest.

Geller fell to the floor mortally wounded. Within a few minutes, perhaps as many as five, Dlugash went over and fired his own pistol five times into Geller's face. Dlugash told the police that he fired his gun believing Geller already dead and fearing for his own life at Bush's hands.

Medical experts for both the prosecution and the defense testified that the shots by either Bush or Dlugash would have been fatal. But none of the experts could say whether Geller was still alive when Dlugash fired.

The trial judge declined to charge the jury that Dlugash could be guilty as an aider and abettor of Bush and presented the case to the jury on two theories, intentional murder and attempted murder.

Before defining the crime of murder the judge told the jury that "the big contention evidently is whether the deceased was alive at the time that Mr. Dlugash shot him." Record, vol. 2, at 566. He then instructed that "a person is guilty of murder when with intent to cause the death of another person he causes such death." *Id.* "Intent" he defined as "a doing of an act deliberately, willfully, knowingly, feloniously as distinguished from doing an act by mistake or by accident or by negligence or by carelessness." *Id.* at 567. After stating that criminal intent could be "inferred from all the facts and circumstances in the case connected with the individual upon whom you are inquiring," the judge charged that "under our law every person is presumed to intend the natural and probable consequences of his acts but this presumption, like all presumptions, may be accepted or rejected by you." *Id.*

After completing the instructions as to murder, the judge turned to the charge of attempted murder. He told the jurors they should not consider this crime if they found petitioner guilty of murder. The critical portion of the instructions on attempted murder reads as follows: "Now, ladies and gentlemen, you will please note that even though it was factually or legally impossible to kill the deceased because of his prior death, you would be warranted in convicting this defendant of an attempt to murder if you found beyond a reasonable doubt that at the time the defendant discharged the bullet into the body of the deceased he, the defendant, actually intended to kill the deceased, believing in his own mind that the deceased was living, even though he was dead." *Id.* at 571–72.

The jury returned a verdict of guilty of murder and Dlugash was sentenced to fifteen years to life. On appeal the Appellate Division, Second Department, reversed,

holding that in the light of the experts' testimony the prosecution had not proven beyond a reasonable doubt that Geller had been alive when Dlugash shot him. The District Attorney, apparently conceding the lack of evidence to convict of murder, asked the court to modify the judgment and enter a judgment of conviction of attempted murder. The Appellate Division declined to do so, finding that there was no proof that Dlugash believed Geller alive. The court accordingly dismissed the indictment. 51 A.D.2d 974, 380 N.Y.S.2d 315 (2d Dept. 1976).

On the District Attorney's appeal the New York Court of Appeals affirmed the dismissal of the murder charge. But the court ruled that there was sufficient evidence for the jury to find that Dlugash believed Geller alive and held that the Appellate Division should have modified the judgment to reflect a conviction for attempted murder. The court's opinion reasoned that by rendering a guilty verdict as to murder the jury necessarily found intent to kill a live person and that subsumed within this finding was a finding that Dlugash believed Geller alive. Concluding that there was no need for further findings of fact by a jury, the court reversed and remanded. 41 N.Y.2d 725, 395 N.Y.S.2d 419 (1977).

The Appellate Division followed the direction of the Court of Appeals and remanded to the trial court for resentence on attempted murder. 59 A.D.2d 745, 398 N.Y. S.2d 560 (2d Dept. 1977). On August 2, 1978, Dlugash was sentenced to up to three years. He appealed again to the Appellate Division, which affirmed. App.Div., 416 N.Y.S.2d 312 (2d Dept. 1979). Leave to appeal to the Court of Appeals was denied. The petition in this court followed. The District Attorney acknowledges that Dlugash has exhausted all state remedies.

Dlugash contends that the modification of the judgment to convict him of attempted murder denied him due process. He argues, among other things, that, while a belief that the victim is alive is an element of both crimes, murder and attempted mur-

der, the jury instructions permitted, indeed invited, the jurors while considering the crime of murder to "presume" the necessary belief once they found Geller alive. Dlugash therefore says the verdict of murder cannot consistently with due process be the foundation for a conviction of attempted murder which requires a finding that he "actually" believed Geller alive.

■ The pertinent part of § 125.25 of the New York Penal Law provides that a person is guilty of murder when "[w]ith intent to cause the death of another person, he causes the death of such person." Under § 110.00 of the Penal Law one who "with intent to commit a crime" engages "in conduct which tends to effect the commission of such crime" is guilty of an attempt. Section 110.10 of the Penal Law provides that if a person's conduct otherwise constitutes an attempt, it is no defense to a prosecution for attempt "that the crime charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission, if such crime could have been committed had the attendant circumstances been as such person believed them to be." As the New York Court of Appeals stated and as the trial judge charged, Dlugash could be found guilty of an attempt under these sections only if he actually believed Geller alive.

■ Although the jury rendered a verdict of murder, Dlugash stands convicted of attempted murder. Due process entitled him to a jury trial of that crime, *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and required that the prosecution prove and the jury find beyond a reasonable doubt every element of the crime. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Therefore, in order to sustain the conviction of attempted murder it must be shown that the prosecution proved and the jury properly found that when he fired his gun Dlugash believed that Geller was alive. Due process further requires that any such findings have been based on instructions which appropriately described under the proof in the case the intellectual process whereby

the jurors might make the finding. *Sandstrom v. Montana*, —— U.S. ——, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

▇ The question is not whether the trial court's charge properly instructed the jurors as to murder. We may assume that and accept the reasoning of the New York Court of Appeals that Dlugash's belief that Geller was alive was subsumed in the finding of intent to kill necessary to a murder conviction. The question before this court is whether a conviction for attempted murder can consistently with due process be based on the instructions as to murder. In deciding that question we must consider what the jurors fairly could have understood they must find in order to conclude that Dlugash had an "intent to kill." Of course, in determining the effect of the court's instructions we must read them as a whole. A violation of due process may not be found by plucking an isolated statement out of context. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *United States v. Guillette*, 547 F.2d 743, 750 (2d Cir. 1976), *cert. denied* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977).

In his instructions as to murder, the judge focused the jury's attention on whether Geller was alive when Dlugash fired. That was the "big contention". Although the judge made it clear that there must be an "intent to kill", he defined "intent" not in terms of Dlugash's belief as to Geller's condition but as the doing of an act deliberately and knowingly as distinguished from mistakenly or negligently. Finally he charged that "under our law every person is presumed to intend the natural and probable consequences of his acts but this presumption, like all presumptions, may be accepted or rejected by you."

The instructions as to the element of intent in attempted murder were in striking contrast to those on intent as applied to the murder charge. To convict of attempted murder, the jurors were told, they must find that Dlugash "actually" intended to kill Geller, "believing in his own mind that the deceased was living."

By concentrating the jury's attention in the murder instructions on the "big contention" of whether Geller was alive when Dlugash fired, and by reciting in the murder instructions that "our law" "presumed" an intent to attain the natural and probable "consequences" of one's acts while requiring "actual" intent in the attempt instructions, the judge led the jurors to understand that in considering the crime of murder they could "presume" Dlugash had an intent to kill once they made a finding that Geller was alive.

The District Attorney suggested on oral argument that the presumption language should be read as meaning no more than that the jury might infer from the fact that Dlugash pulled the trigger of his loaded gun that he intended the "natural consequences" that bullets would be discharged and hit the object at which he aimed. There is no warrant for this argument. The "intent" to which the jury's attention was directed was "intent to kill", not a more generalized intent to hit an object. Clearly the instructions invited the jurors to "presume" intent to kill from the "natural consequences" of shooting a live person.

As the jurors considered the crime of murder the logical sequence of their deliberations could well have been as follows. First they would have focused on the "big contention", whether Geller was alive. Having decided that Geller was alive they would have concluded that the "natural and probable consequence" of shooting five times into a live man's face would have been to kill him. From that they would have understood they could "presume" the requisite intent.

Since the jurors found that Geller was alive when Dlugash fired, it certainly does not appear that their conclusion that Dlugash had the requisite intent was reached by considering only sources independent of their determination that Geller was alive. It follows that whether the jurors understood the word "presume" as having its common dictionary meaning of "to suppose

to be true without proof", *Webster's New Collegiate Dictionary* 911 (1974), or merely as permitting an inference, the conviction cannot stand under the due process clause.

If the instruction is read merely to permit an inference, the conviction of attempted murder is based on a finding of intent to kill which may well, and probably does, rest on an inference drawn from an unproven supposition. Since no expert could say whether Geller was alive or dead, there was no evidence on which to base a finding, even by a preponderance of the evidence, that he was living. To comport with due process inferences may only be made from proven facts. *United States v. Thomas*, 453 F.2d 141, 143 (9th Cir. 1971) *cert. denied* 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1972).

If the instruction is construed to allow a presumption shifting the evidentiary burden as to intent and to permit a finding of intent to kill on the false hypothesis that the prosecution had proven Geller alive, the conviction plainly denies due process. *Sandstrom v. Montana, supra.*

Whichever of the two interpretations is adopted there is no assurance that the jury properly found beyond a reasonable doubt the essential element, namely, Dlugash's belief that Geller was alive. *In re Winship, supra.* While a conclusion that there had been a violation of due process may not be based on highly speculative conjectures, *cf. Henderson v. Kibbe*, 431 U.S. 145, 157, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), Dlugash need not demonstrate beyond doubt that the jurors would have reached the conclusion that he believed Geller dead had they considered the question apart from their supposition that he was alive. It is enough to show a fair possibility that they would have done so. *Sandstrom v. Montana, supra; United States ex rel. Hetenyi v. Wilkins*, 348 F.2d 844, 867 (2d Cir. 1965), *cert. denied* 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966). Dlugash has met that burden. Indeed, the Appellate Division went so far as to say that the record showed "not a scintilla of evidence to contradict" Dlugash's assertion that he believed Geller dead. 51 A.D.2d at 975, 380 N.Y.S.2d at 317.

Although no objection was made to the trial judge's instructions as to murder, Dlugash did not thereby waive the due process contention he makes here and made in the state appellate courts. Nor does the District Attorney urge that there was a waiver. This is not a case where an objection in the trial court would have avoided error. *Cf. Henderson v. Kibbe, supra; Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). The violation of due process claimed did not occur at the trial but as a result of the action of the New York Court of Appeals in directing the entry of judgment of conviction of attempted murder. Against that error Dlugash had no way of forfending in the trial court.

The court has considered and rejected Dlugash's contention, briefed but not argued, that he should be released unconditionally because there was insufficient evidence for a jury to convict of attempted murder. The other issues raised need not be decided.

The conviction having been obtained in violation of Dlugash's right to due process, the petition is granted, and he shall be released unless the State grants him a new trial within sixty days. So ordered.