**Thomas P. McGUINN, Petitioner,**

v.

**Roger W. CRIST, Warden of Montana State Penitentiary, Respondent.**

**No. CV–80–5–Bu.**

United States District Court,
D. Montana,
Butte Division.

July 3, 1980.

Dan Sweeney, Butte, Mont., for petitioner.

John Maynard, Asst. Atty. Gen., Helena, Mont., for respondent.

ORDER

WILLIAM D. MURRAY, Senior District Judge.

■ Thomas McGuinn, petitioner herein, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The issue raised by the petitioner is the effect of the trial court's instruction to the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts," hereinafter referred to as the *Sandstrom* instruction. In *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the United States Supreme Court held that this instruction relieved the State of its burden of proof, which is constitutionally impermissible. For the reasons set forth below, the petition for writ of habeas corpus must be granted.

Petitioner was convicted of deliberate homicide in February, 1977. He appealed to the Supreme Court of Montana and the judgment was affirmed. He then petitioned the Montana Supreme Court for a writ of habeas corpus, which was denied.

Following that, he brought a petition for writ of habeas corpus in this court. This court considered the issues raised by his petition and, after a hearing, denied relief on all issues save the *Sandstrom* issue. As to that issue, the petitioner had failed to exhaust state remedies, and the petition was dismissed without prejudice.

Petitioner subsequently went back to the Montana Supreme Court on a petition for

writ of habeas corpus, which was denied November 30, 1979. The Supreme Court, in a short Order, stated "Petitioner waived any objection to the *Sandstrom* instruction for failure to object to the trial court and we refuse to invoke the plain error rule."

■ Respondent contends that petitioner's failure to object at trial to the giving of the *Sandstrom* instruction bars this court's review, citing *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In Montana, however, the failure to object does not necessarily bar review by the Montana Supreme Court. Under MCA 46–20–702, 1979, "[D]efects affecting . . . constitutional rights may be noticed although they were not brought to the attention of the trial court." Thus, the state's interest in its contemporaneous objection policy is not compelling and will not bar this court on habeas corpus. See, *Quigg v. Crist*, 616 F.2d 1107, n. 4 (9th Cir. 1980). It is therefore necessary to examine petitioner's claim.

In *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the United States Supreme Court held that the instruction, "[T]he law presumes that a person intends the ordinary consequences of his voluntary acts," relieved the state of its burden to prove "beyond a reasonable doubt . . . every fact necessary to constitute the crime with which [the defendant] is charged." 442 U.S. at 523, 99 S.Ct. at 2459, citing *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1969). This is so because

. . . whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror *could have* interpreted the instruction. 442 U.S. at 514, 99 S.Ct. at 2454 (emphasis added).

The Court found two ways in which a reasonable juror could have interpreted the instruction, both resulting in a violation of the defendant's constitutional rights.

First, a reasonable jury could well have interpreted the presumption as "conclusive," that is, not technically as a presumption at all, but rather as an irrebutt-

able direction by the court to find intent once convinced of the facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their "ordinary" consequences), unless the defendant proved the contrary by some quantum of proof which may well have been considerably greater than "some" evidence—thus effectively shifting the burden of persuasion on the element of intent. *Id.*, 442 U.S. at 517, 99 S.Ct. at 2456.

The Court held that "either interpretation would have deprived defendant of his right to due process of law . . . ." *Id.*, at 524, 99 S.Ct. at 2459, and the instruction was therefore unconstitutional. Similarly, in this case the giving of the *Sandstrom* instruction deprived petitioner of his right to due process of law. Respondent, however, presents two further contentions which must be addressed.

1. Whether the instructions, viewed as a whole, "cure" the error created by the giving of the *Sandstrom* instruction.

■ Respondent contends that the instructions, viewed as a whole, ameliorate the presumptive effect of the *Sandstrom* instruction. The Supreme Court did, indeed, appear to leave open two ways in which, even though the defective instruction was given, the conviction might not be overturned. First, the Court noted that the jury was "not told that the presumption [created by the instruction] could be rebutted." *Sandstrom v. Montana*, 442 U.S. at 517, 99 S.Ct. at 2455. Nor were any "qualifying instructions as to the legal effect of the presumption" given. *Id.* The above language suggests that instructions explaining the legal effect of a presumption might "cure" the error. In this case, however, no such instructions were given.

The second portion of the opinion suggesting the possibility of "cure" appears at 442 U.S. 510, 518–19 n. 7, 99 S.Ct. 2450, 2456 n. 7, 61 L.Ed.2d 39:

The potential for these interpretations of the presumption was not removed by the other instructions given at the trial. It is true that the jury was instructed generally that the accused was presumed innocent until proven guilty, and that the State had the burden of proving beyond a reasonable doubt that the defendant caused the death of the deceased purposely or knowingly. But this is *not rhetorically inconsistent* with a conclusive or burden-shifting presumption. (emphasis added).

The emphasized language suggests that if the other instructions given *are* rhetorically inconsistent with the *Sandstrom* presumption, they may serve to "cure" the defect. If that is so, a reviewing court must examine all other instructions given in regard to the State's burden to determine their consistency or inconsistency with the defective instruction.

The difficulty in divining the meaning of the term "rhetorically inconsistent" is a major stumbling block to its meaningful application. Furthermore, even if the other instructions are found to be "rhetorically inconsistent," it is impossible to determine whether the jury recognized the inconsistency and rejected the *Sandstrom* instruction. Since a determination of "whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction," *Sandstrom, supra,* at 514, 99 S.Ct. at 2454, if a reasonable juror could have accorded the *Sandstrom* instruction presumptive effect irrespective of the other instructions, then it must be assumed that some portion of the State's burden of proof was shifted to the defendant, in violation of his right to due process of law.

Turning then to a review of the instructions, I cannot say with any certainty that any of them were so "rhetorically inconsistent" with the *Sandstrom* instruction that they overcame its presumptive effect. Although a violation of due process may not be found by plucking an isolated statement out of context, *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), this court cannot speculate as to the effect of the instruction on the jury. There is no assurance that the jury did not find petitioner guilty on the grounds that he acted voluntarily, rather than finding the intent necessary to find petitioner guilty of deliberate homicide.

In addition, Instruction # 7 given immediately after the *Sandstrom* instruction, may have further led the jury to presume intent from a voluntary act, in violation of petitioner's constitutional rights. Both instructions are set forth below:

# 6: The law presumes that a person intends the ordinary consequences of his voluntary acts.

# 7: A material element of every crime is a voluntary act.

These two instructions taken together were a clear invitation to the jury to presume intent, a material element of the crime charged, from evidence of a voluntary act. If so, the instructions shifted to the defendant and burden of disproving the voluntariness of his acts, in violation of defendant's constitutional rights. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). As stated above, there is no assurance that the jury did not regard the presumption as conclusive, directing it to return a verdict of guilt "once convinced of the facts triggering the presumption." *Sandstrom,* 442 U.S. at 517, 99 S.Ct. at 2456. In fact, it is likely that the jury did so. That being the case, petitioner was denied his constitutional right to due process of law. See *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Holloway v. McElroy,* 474 F.Supp. 1363 (M.D.Ga.1979); *Dlugash v. New York,* 476 F.Supp. 921 (E.D.N.Y.1979).

The respondent raises one further question which must be addressed by this court.

2. Whether the giving of the *Sandstrom* instruction may be regarded as harmless error.

Respondent contends that the giving of the *Sandstrom* instruction was, at most,

harmless error, citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This argument was raised in the Supreme Court but not considered. *Sandstrom v. Montana*, 442 U.S., at 526–27, 99 S.Ct., at 526–527.

Respondent's argument finds its basis in *Chapman v. California, supra*, where the Court stated:

> there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring automatic reversal of the conviction. 386 U.S. at 22, 87 S.Ct. at 827.

 While it is clear that a "harmless constitutional error" doctrine exists, it is also clear that there are two significant impediments to its application. First, "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error . . ." *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. at 827–828 (1967), citing as examples *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (coerced confession); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (right to counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (impartial judge). Thus, before applying the harmless error rule a court must make a determination that the constitutional right affected is not "so basic to a fair trial" that its abrogation can be brushed aside as harmless error.

The second impediment to the application of the harmless error rule is that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman, supra*, 386 U.S. at 24, 87 S.Ct. at 828. This is a high standard and one that, when considering the effect of a conclusive presumption on the minds of the jury, is obviously difficult to satisfy.

On this petitioner's prior petition for writ of habeas corpus to the Montana Supreme Court, that court refused to invoke what it calls the "plain error" rule, citing Judge Hatfield's decision in *Collins v. Crist*, 473 F.Supp. 1354 (D.Mont.1979). In that case, Collins had failed to object to the giving of the *Sandstrom* instruction at trial. The federal district court invoked the "plain error" rule to consider whether it was "highly probable" that the error of the *Sandstrom* instruction "materially affected the verdict." *Collins v. Crist, supra*, at 1357, citing *United States v. Dixon*, 562 F.2d 1138 (9th Cir. 1977).

This court is of the opinion that the "plain error" rule does not apply, for it sets the wrong standard by which to measure the effect of constitutional error. Rather, if any such error doctrine is applicable it is the "harmless error" rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Applying the *Chapman* standards to this case, petitioner's due process rights were violated. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This is a right "so basic to a fair trial that its infraction can never be treated as harmless error." *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967). Thus, the court must reject respondent's contention that the giving of the *Sandstrom* instruction in this case was mere harmless error.

Even if the court were able to consider the error in this case as harmless, it was not "harmless beyond a reasonable doubt." *Id.*, 386 U.S. at 24, 87 S.Ct. at 828. From a careful review of the instructions given in this case, it is apparent that the jury could have found intent from the barest amount of evidence that the defendant acted voluntarily.

The conviction having been obtained in violation of petitioner's right to due process,

IT IS HEREBY ORDERED and this does order that the petition for writ of habeas corpus be and the same is hereby granted, and the petitioner shall be released unless

the State grants him a new trial within sixty days.