James C. SPURLOCK, Petitioner pro se,

v.

Henry RISLEY,* Warden, Montana State Prison, and Michael T. Greely, Attorney General of the State of Montana, Respondents.

No. CV 80–101–M.

United States District Court,
D. Montana,
Missoula Division.

Aug. 11, 1981.

---

* At the time this action was filed James G. Blodgett was serving as Acting Warden of Montana State Prison. Subsequently Henry Risley was appointed Warden and is now serving in that capacity.

James C. Spurlock, petitioner pro se.

Mary B. Troland, Asst. Atty. Gen., Helena, Mont., for respondents.

## OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

The petition for a writ of habeas corpus is denied.

### The Sandstrom Instruction

Petitioner and codefendant were convicted in May 1972 by a jury on five counts of armed robbery. The evidence established without contradiction that four service stations were robbed by two men within a thirty- to forty-minute period. The police staked out the last station robbed and caught defendants in the act. A high-speed, gun-shooting chase ensued, ending when three police cars rammed the vehicle which petitioner was driving. Petitioner's identity was overwhelmingly established. Petitioner took the stand in his own behalf. He made no effort to contradict the state's proof of the robberies. He testified that he was a heroin addict and that he had ingested an incredible amount of heroin and other drugs during a several-hour period prior to the robberies. Petitioner testified that, because of the drug use, he could not recall any of the events surrounding the robberies.

In 1979 the Supreme Court of the United States, in *Sandstrom v. Montana*, 442 U.S. 510, 515, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979), held that an instruction reading " '[t]he law presumes that a person intends the ordinary consequences of his voluntary acts' " was unconstitutional because reasonable jurors could have viewed the presumption as conclusive or could have interpreted it "as a direction to find intent upon proof of defendant's voluntary actions (and their 'ordinary' consequences), unless *the defendant* proved the contrary by some quantum of proof which may well have been considerably greater than 'some' evidence—thus effectively shifting the burden of persuasion on the element of intent." *Id.*, at 517, 99 S.Ct. at 2456.

It is now claimed that an instruction given in this case is likewise unconstitutional. The instruction read:

In order to constitute the offense charged in this case, the intent alleged in the Information is necessary to be proved, but direct and positive testimony is not necessary to prove the intent. It may be inferred from the evidence if there are any facts proved which satisfy the jury, beyond a reasonable doubt, of its existence.

The law also presumes that a person intends the ordinary consequences of any voluntary act committed by him. *The latter presumption, however, is termed a disputable presumption and may be controverted by other evidence.*

(Emphasis supplied.) It is to be noted that the instruction here could not be interpreted by any juror to be mandatory in nature.

Did it, however, shift either the burden of going forward with the evidence or the burden of persuasion? In this case there was no instruction defining the word "presumption." I assume that the reasonable juror mentioned in *Sandstrom* would be consistently reasonable during his interpretation of the instructions given. In other

words, if the jury was "attentively attuned to the instructions of the trial court,"[1] it was attentively attuned to all of them and not to just the one bearing on the presumption of intent. If, in the absence of any definition, the reasonable juror understood that a jury must find in accordance with a presumption unless some evidence to the contrary was introduced, still that same juror could not conclude here, in light of all of the instructions, that any burden of any kind shifted. The jury was told "you are to consider all of the instructions as a whole, and are to regard each in light of all the others"; and that "[w]here circumstantial evidence is relied upon for conviction, it must be of such a character that leads to but one fair and reasonable conclusion, pointing to the defendant to the exclusion of all others as the guilty person." The jury was also told that "[n]o presumption is raised by the law against [the defendants], but every presumption of law is in favor of their innocence, and in ,order to convict them of the crime charged against them, every material fact or element necessary to constitute such crime must be proved by the State by competent evidence beyond a reasonable doubt." A reasonable juror might consider that the words "no presumption is raised by the law against them" cancelled out the instruction on intent, and at the very least a reasonable juror would be bound to consider that the presumption of innocence was at least as strong as the presumption of intent. No matter what weight of evidence was required to rebut the presumption of intent, evidence of equal weight was required to rebut the presumption of innocence. Under these circumstances the instructions at least equalized each other, and the state was required to go forward and prove sufficient evidence to dispell any reasonable doubt.

I am fully aware that an argument can be made on the basis of the language used in *Sandstrom* that the instruction given here did alter the burden of proof. In *Sandstrom* at 522, 99 S.Ct. at 2458 the Su-preme Court quoted from *Morissette v. United States,* 342 U.S. 246, 274–75, 72 S.Ct. 240, 255–56, 96 L.Ed. 288 (1952), as follows:

> "*It follows that the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act.* It often is tempting to cast in terms of a 'presumption' a conclusion which a court thinks probable from given facts. . . . [But] [w]e think presumptive intent has no place in this case. *A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense.* A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, *this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime.*" Id., at 274–275, 72 S.Ct. at 255–56. (Emphasis added; footnote omitted.)

The Court in *Morissette* was dealing with a charge which had given mandatory effect to a presumption which the Supreme Court characterized as having an artificial and fictional effect and which, under the facts of the case, was artificial. The language in the charge in *Morissette* was substantially different from the language in the charge here, and in any event the Court in *Morissette* was dealing with the nature of the presumption of innocence and not with due process.

The Court in *Sandstrom,* 442 U.S. at 513, 99 S.Ct. at 2453–54 cited *Mullaney v. Wilbur,* 421 U.S. 684, 686, 95 S.Ct. 1881, 1883, 44 L.Ed.2d 508 (1975). In *Mullaney* the jury had been instructed that "'malice

---

**1.** *See* special concurrence of Justice Rhenquist, *Sandstrom v. Montana,* 442 U.S. 510, 528, 99 S.Ct. 2450, 2461, 61 L.Ed.2d 39 (1979).

aforethought is an essential and indispensable element of the crime of murder' " and that "if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation." *Id.*, at 686, 95 S.Ct. at 1883. (Footnote omitted.)

The Court in *Sandstrom*, 442 U.S. at 513, 99 S.Ct. at 2454 also quoted from *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), which affirmed a New York Court of Appeals judgment approving an instruction placing upon a defendant the burden of proving his affirmative defense of severe emotional disturbance.

In none of the cases mentioned were the facts remotely similar to the facts in this case, and if any language in them was used to justify a conclusion that the instructions given here shifted the burden of proof, that language would be used out of context. *Sandstrom* involved a different instruction than that given here, and I am unwilling to extend the doctrine of *Sandstrom* beyond its facts.[2] I do not reach the problem of whether, as decided by the state trial court, the error was harmless. *See McGuinn v. Crist*, 492 F.Supp. 478 (D.Mont.1980); *United States ex rel. Collins v. Crist*, 473 F.Supp. 1354 (D.Mont.1979).

*Other Alleged Constitutional Defects*

The petitioner sought habeas corpus relief in the state supreme court, alleging the same complaints presented here. The supreme court referred the matter to a district court for an evidentiary hearing. The supreme court adopted the district court's findings and found against the petitioner on the issues raised here, and denied the petition. The transcript of the trial and the transcript of the habeas corpus hearing are now before the court. The findings of the state court following an evidentiary hearing are presumptively correct. 28 ·U.S.C.

§ 2254(d). I conclude that the record supports the findings of the state court and that there were no denials of constitutional rights.

The U. S. Magistrate to whom this matter was referred recommended that a writ be granted on the ground that, by denying a request for continuance, the court had denied petitioner the effective assistance of counsel. An information was filed on January 28, 1972. On April 21st the case was set for trial as the second case on May 1, 1972. The trial commenced on May 4th.

■ As to the denial of the continuance, the Supreme Court of Montana, quoting *Montana v. Spurlock*, 161 Mont. 388, 389–91, 506 P.2d 842, 843 (1973), said:

"However, prior to trial on May 4, 1972, a motion for withdrawal of counsel was granted and Robert J. Campbell, Esq., was entered as counsel. In granting this motion, the court specifically questioned both defendants after making them aware that their other motions (including the motion for a continuance) would not be granted, as to whether they would still prefer to have Robert J. Campbell substituted as counsel replacing D. R. Matthews. Both defendants stated they so preferred. The court then suggested that Matthews remain to participate in the defense and requested both defendants' permission before Mr. Matthews was permitted to leave. Both defendants gave that permission.

"At the time the court was considering the request for substitution of counsel, Mr. Matthews stated: 'They have told me absolutely nothing. They will not confide in me, there has been no communication at all.'

"In their appeal brief, defendants stated 'Prior to trial the defendants remained in the Missoula County jail and sought private counsel as best they could.' The record does not support this statement. It does not disclose that defendants or

---

**2.** The case of *McGuinn v. Crist*, 492 F.Supp. 478 (D.Mont.1980), involved an instruction equivalent to that condemned in *Sandstrom v.*

*Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

anyone acting in their behalf, contacted or were refused by any attorney prior to their contacting Mr. Campbell, who did take their case. It does not disclose that defendants were refused permission to contact any attorney while they were in jail. It does disclose that Mr. Campbell was contacted for the first time by Mrs. Spurlock at 4:15 p.m. on May 3, 1972, over three months after the arraignment of defendants and on the afternoon before the trial date."

*Spurlock v. Crist*, Mont., 614 P.2d 498, 500 (1980). The factual statements are supported by the record. Attorney Campbell did enter the case unprepared, but the petitioner had had two choices: He could have cooperated with court-appointed counsel; or he could have chosen his own counsel in sufficient time for that counsel to become prepared. He did neither. Petitioner was not deprived of a right. He did not exercise the rights which he had.

The question of whether petitioner was denied equal protection in the failure to appoint a psychiatrist is not urged here and was not urged in the state court proceeding.