■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARK SMITH, Appellant. — Judgment of the Supreme Court, Suffolk County (Jaspan, J.), rendered October 31, 1980, affirmed. No opinion. This case is remitted to the Supreme Court, Suffolk County, for further proceedings pursuant to CPL 460.50 (subd 5). Lazer, J. P., Gibbons, Gulotta and Bracken, JJ., concur.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAUL B. SMITH, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Balbach, J.), rendered December 20, 1979, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. Judgment affirmed. The defendant was accused of murdering Robert Johnson in a hallway of the building in which they both resided. The prosecution's evidence showed that on the night of February 1, 1979, Johnson asked a neighbor, Louis Febre, to accompany him upstairs to talk with the defendant who, according to Johnson, had been loitering at his doorway, tampering with the lock. Johnson tucked a knife under his right sleeve "[j]ust in case anything happened", and he and Febre proceeded to the defendant's apartment. Johnson knocked on the defendant's door and, when he identified himself, the defendant came outside into the hallway. The defendant immediately began yelling and demanding that Johnson's wife be brought upstairs so that the matter could be settled. As Febre summoned Johnson's wife, the defendant went back into his apartment, returned carrying a gun, and struck Johnson with the weapon. When Johnson

attempted to return the blow, his knife slipped out of his sleeve and fell to the floor. The defendant immediately began shooting at Johnson who then tried to run downstairs. The defendant continued firing, however, until Johnson collapsed. After shooting once at Febre, the defendant fled, surrendering to the police the next day. The medical examiner subsequently determined that Johnson had died of four bullet wounds, two to his head, one to his chest, and one to his back. The defendant testified in his own behalf and presented a somewhat different version of the incident. He claimed that, when his doorbell rang, he opened the door and saw Johnson and Febre standing outside. Johnson, holding a knife in his hand, accused the defendant of having tried to burglarize his apartment. When the defendant denied the charge, Johnson came at him with the knife. According to the defendant, Johnson "broke and tried to stab me in my head, and I held my hand up and he caught me a little bit, and I ran in the house and got a .25 automatic in my bedroom, I got it and went outside and he was standing about ten feet away from me at the time. As soon as I came out and he saw me he like, you know, he was coming towards me and I started firing." The defendant recalled firing "[a]t least five, three or four times." He testified that, thereafter, Johnson "turned around and running [sic] down the hall and I fired once more, and that was it." Throughout the confrontation, the woman and child with whom the defendant was residing were in his apartment. Significantly, the defendant testified that, when he ran back into the apartment to get the weapon, he slammed the door behind him. Although the door did not lock automatically when closed, it could be locked manually. The defendant, however, made no attempt to lock the door. Johnson did not attempt to follow the defendant into his apartment but waited in the hallway until the defendant returned with the weapon. The defendant claimed that, upon returning to the hallway, he did not close his apartment door and was backing up into the apartment when Johnson came at him. Febre, on the other hand, testified that, when the defendant re-emerged from his apartment, he closed the door behind him. On appeal, the defendant contends that he was deprived of a fair trial by errors in the court's charge to the jury. He argues further that the court improperly declined to submit the charge of manslaughter in the second degree as a lesser included offense. We reject both contentions. The defendant maintains that the court committed error in its instructions regarding the defense of justification. Subdivision 2 of section 35.15 of the Penal Law provides that a person, faced with the use of deadly physical force, may not defend himself by his own use of similar force "if he knows that he can with complete safety *as to himself and others* avoid the necessity of so doing by retreating". (Emphasis supplied.) In speaking of this provision in its charge on justification, the court told the jury that "the actor may not use deadly physical force if he knows that he can with complete safety *as to himself* avoid the necessity of so doing by retreating." The defendant contends that there was a question in the case as to whether he knew he could retreat into his home with complete safety to his family. Therefore, he reasons, the omission in the court's charge deprived him of a fair trial. We disagree. There is no suggestion in the record, either in the prosecution's evidence or in the case for the defense, that the woman and child who were in the defendant's apartment were ever in danger. Nothing Johnson reportedly said indicated the slightest ill will directed at them. Indeed, when the defendant went back into his apartment to get his gun, Johnson by all accounts, remained in the hallway, making no effort to follow him in. There is no evidence of a time when the woman and child were in danger while the defendant was not. The defendant, therefore, could not possibly have entertained the belief that he could have retreated with complete safety as to himself but not as to others in his apartment.

Accordingly, the failure to charge the statute in full, if error, was entirely harmless. (Cf. *People v Shanis,* 36 NY2d 697.) And, in any event, the defendant raised no objection to the charge as given. The defendant next complains that the court delivered a so-called "natural and probable consequences" charge of the type condemned in *Sandstrom v Montana* (442 US 510). The record, however, does not support the claim. The charge, read as a whole, did not leave the jurors with the improper impression that they should or could infer intent solely from the doing of a particular act. (See *People v Getch,* 50 NY2d 456, 465.) Moreover, the defendant has failed to preserve this issue for review since he raised no contemporary objection to the charge. (See *People v Thomas,* 50 NY2d 467.) Finally, we find no merit in the defendant's contention that the court erred in failing to submit the charge of manslaughter in the second degree as a lesser included offense. Viewing the testimony in the light most favorable to the defendant (see *People v Shuman,* 37 NY2d 302, 304; *People v Battle,* 22 NY2d 323), there was no reasonable view of the evidence under which a jury might conclude that the defendant recklessly caused Johnson's death. (See CPL 300.50, subd 1.) Indeed, his own testimony made plain that he intentionally shot at Johnson. Accordingly, the court did not err in refusing to charge the lesser included offense of manslaughter in the second degree. (See *People v Scarborough,* 49 NY2d 364.) We have reviewed the defendant's remaining contentions and find them to be without merit. Mollen, P. J., Titone, Gibbons and Thompson, JJ., concur.