## 71558. TRENOR v. THE STATE.
### (343 SE2d 408)

BEASLEY, Judge.

Trenor was convicted of voluntary manslaughter. OCGA § 16-5-2. (At the time of the incident, it was Code Ann. § 26-1102).[1]

1. Trenor asserts the general grounds, recognizing that the evidence must be viewed in favor of the verdict. *Laws v. State*, 153 Ga. App. 166, 167 (1) (264 SE2d 700) (1980). He attempts to show that the evidence did not support the verdict but rather supported his theory of self-defense, even if based on a "mistake" or misapprehension of fact.

"[W]e can only review the evidence to determine if there is any evidence to support the verdict." *Thomas v. State*, 175 Ga. App. 873 (1) (334 SE2d 903) (1985). The evidence was that Trenor went fishing with Bryan Smith, Stephen Holder, Emma Myers and Kay Hill, and that during the course of the day, the group consumed a sizable quantity of alcohol and purchased more on the way back to Trenor's

---

[1] This follows Trenor's second jury trial for Bryan Smith's death. The first trial resulted in Trenor's conviction for malice murder. The Supreme Court ruled that the evidence supported the verdict but reversed the judgment because part of the jury charge shifted the burden of proof to defendant contrary to the standards in *Sandstrom v. Montana*, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979). See *Trenor v. State*, 252 Ga. 264 (313 SE2d 482) (1984).

trailer. Once at the trailer, Trenor brought his pistol and a clip of bullets inside. The men started playing poker and drinking. During the evening, Stephen Holder contacted his brother Phillip and asked him to come to the trailer to provide transportation for himself and Bryan Smith. When the brother arrived, the three men were still playing poker and the two women were talking. The women were sent to get more alcoholic beverages and when they returned, Smith became argumentative about the change he received. Throughout the day, Trenor, Bryan Smith, and Stephen Holder had argued for various reasons and at one point in the evening engaged in a contest to see who could switch or flip open his knife the fastest. Trenor asked Smith to leave his trailer on a couple of occasions. At times, Smith would start to leave and then come back. At one point, Trenor thought that Smith was going to stick him with a knife.

As Smith eventually left the trailer, he stated to Trenor, " 'You better unload it.' " Trenor had picked up his loaded pistol from the top of the stove, steadied it with both hands, and pointed it at Smith as he walked out the door. Smith reappeared and stood in the doorway with both hands in his pants' pockets. After holding the gun for approximately eight to ten seconds, Trenor shot Smith in the chest, the bullet perforating both lungs and the heart. Trenor then hid the gun in a garbage can outside the trailer.

" 'When a homicide is neither justifiable nor malicious, it is manslaughter, and if intentional, it is voluntary manslaughter.' [Cit.] . . . The distinguishing characteristic between voluntary manslaughter and justifiable homicide is that the accused was so influenced and excited that he reacted passionately rather than simply to defend himself. [Cit.] Circumstances necessary to show voluntary manslaughter, as opposed to justifiable homicide, relate to a situation which arouses sudden passion in the person killing so that, rather than defending himself, he wilfully kills the attacker, albeit without malice aforethought, when it was not necessary for him to do so in order to protect himself. [Cits.] . . . The fear of some danger can be sufficient provocation to excite the passion necessary for voluntary manslaughter. [Cit.]" *Syms v. State*, 175 Ga. App. 179, 180 (1) (332 SE2d 689) (1985).

Trenor claimed the shooting was in self-defense, even if under the mistaken notion ("misapprehension of fact") that the victim was advancing with the intention of doing great bodily injury to him.[2]

---

[2] He also asked for, and got, a jury instruction on the defense of misfortune or accident. Although there is some mention of accident, " '[w]hen a person claims to be acting in self-defense, as was the appellant, the defense of accidental killing is not involved. [Cit.]' *Todd v. State*, 149 Ga. App. 574, 575 (254 SE2d 894) (1979)." *Boling v. State*, 244 Ga. 825, 829 (9) (262 SE2d 123) (1979).

The evidence here was in dispute as to whether Trenor shot Smith with malice aforethought (since he was charged with murder), out of passion, or out of justification in self-defense. The resolution of this question depended heavily on the credibility of the witnesses, including Trenor. Decisions regarding credibility are exclusively for the jury. OCGA § 24-9-80; *Burnette v. State,* 165 Ga. App. 768, 769 (2) (302 SE2d 621) (1983). A rational trier of fact was authorized to find the elements of voluntary manslaughter beyond a reasonable doubt. *Syms,* supra; *Jackson v. Virginia,* 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

Appellant also complains of three jury charges.

2. The court charged "that voluntary intoxication is not an excuse for any criminal act or omission." The reason this was error, Trenor urges, is that *he* did not introduce any evidence of his intoxication, that it would negate his defense of justification due to self-defense, that it shifted the burden of proof to him to prove his sobriety, and that it was thus prejudicial and harmful.

There was ample evidence that Trenor, as well as other members of the fishing party, had consumed quantities of alcohol, mainly beer, during the afternoon and evening up to the time of the shooting. In addition, when the arresting officer arrived on the scene, he could smell alcohol on Trenor's breath. Several of the witnesses to the shooting testified about the day's alcohol consumption. Trenor testified on direct: "Counsel: Had you ever drunk any peppermint schnapps before? Trenor: That was the first time. Counsel: That was your first time? Trenor: First and last. Counsel: Did you then drink much of the schnapps that night? Trenor: No, sir, I didn't. I steadily drank beer after that. I am a beer drinker, you know. That's basically what I drink, is beer."

"The instructions of the court in a criminal trial should be tailored to the indictment and adjusted to the evidence admitted in court. . . . Any instruction should stand upon a base founded in the evidence or the lack thereof." *Crosby v. State,* 150 Ga. App. 555, 557 (2) (258 SE2d 264) (1979).

Since there was evidence of voluntary intoxication as part of the whole picture of what occurred leading up to the shooting, the court was correct in advising the jury how the law considers such a factor. That is, if the jury believed defendant was voluntarily intoxicated when the act with which he was charged occurred, it would be pertinent for the jury to know that this would not affect defendant's criminal responsibility. Even though Trenor was not claiming that it would, and was not attempting to use that as a defense and in fact was insisting that he was sober, the instruction was proper. Its relevancy is not limited to situations where defendant is seeking to use intoxication as an excuse for his behavior. According to the evidence,

alcohol consumption had accompanied the activities of the day, and should the jury have considered the impact of its usage on Trenor and his criminal responsibility, they would need to know what the law on the matter was.

We reject Trenor's contention that the charge was impermissibly burden-shifting. We do not perceive that it shifted the burden of proving guilt beyond a reasonable doubt. It simply advised the jury of the law's view of the effect of the fact of voluntary intoxication on a person's criminal responsibility, that is, that it has no effect. As to burden-shifting considerations, see *Sandstrom v. Montana*, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979), and *Francis v. Franklin*, 471 U. S. ___ (105 SC 1965, 85 LE2d 344) (1985).

3. The court charged that "premeditation is not a specific element of malice murder in the State of Georgia." Trenor enumerates this as reversible error because there was no evidence of premeditation and further, that it is not an element of the crime so it was extraneous, misleading, and confusing to the jury.

First, Trenor was being tried for murder. The court was obligated to charge what the elements were and remove any misunderstanding about them. A charge clarifying the crime was entirely appropriate and certainly not "extraneous" since the precise issue was whether Trenor had murdered Smith. It was a correct statement of Georgia law. *Hubbert v. State*, 254 Ga. 429, 430 (2) (330 SE2d 583) (1985).

As to there being no evidence of premeditation, that was the whole point. There did not have to be, and the jury was entitled to know that. *Hubbert*, supra.

Second, Trenor was not affected by the charge since he was not convicted of murder. See *Duffy v. State*, 146 Ga. App. 400, 401 (2) (246 SE2d 420) (1978).

4. Appellant enumerates as error the court's charges having to do with the element of defendant's intentions. He claims they violated the federal constitutional standard announced in *Sandstrom v. Montana*, 442 U. S. 510, supra and were basically the same in spirit as the charge declared unconstitutional in *Francis v. Franklin*, 471 U. S. ___, supra. His argument is that changing the word "presume" to "may infer" does not overcome the evil, and that the jury would still believe that he had the burden to prove he did *not* intend to kill Smith.

In *Franklin*, the Supreme Court determined the charge to be infirm because "[t]he challenged sentences are cast in the language of command. They instruct the jury that 'acts of a person of sound mind and discretion *are presumed* to be the product of the person's will,' and that a person '*is presumed* to intend the natural and probable consequences of his acts,' . . . These words carry precisely the message of the language condemned in *Sandstrom*. . . . The jurors 'were

not told that they had a choice, or that they *might* infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory.'" Id. at 354, 355. There is no such mandatory presumption in the presently-attacked charge. The use of "infer," which appellant challenges, was expressly approved in *Francis*, in the proper context, of course.

We must look at the whole charge on the subject, *Francis v. Franklin*, supra at 354, and determine what construction a reasonable juror might have placed on the contested charge. *Parks v. State*, 254 Ga. 403, 414 (12) (330 SE2d 686) (1985). In addition to what is complained of, the court had earlier given a comprehensive charge on the burden of proof, including repeated instructions that defendant has no burdens, of proof or persuasion or testifying or calling witnesses or introducing any evidence. The court reminded the jury again of the state's burden just before it charged on the definition of crime and gave the charge complained of, and after that charge, it gave the caveat: "Now, ladies and gentlemen of the jury, whether or not you make any such inferences are matters solely within your discretion."

We find no federal constitutional error.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED MARCH 19, 1986.

*James W. Maher*, for appellant.

*Thomas J. Charron*, District Attorney, *Nicolette Templer, Nancy I. Jordan*, Assistant District Attorneys, for appellee.