# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARKEVOUS TYMES | § | |
| | § | 681, 2015 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1408021173 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | | |

Submitted: March 1, 2017
Decided: March 7, 2017

Before **HOLLAND**, **VALIHURA**, and **SEITZ**, Justices.

This 7th day of March 2017, it appears to the Court, as follows:

(1)    Markevous Tymes was indicted by a grand jury with Second Degree Burglary, two counts of Theft From a Senior, Second Degree Conspiracy, Receiving Stolen Property over $1500, and Criminal Mischief.  On September 3, 2015, after a two day trial, a Superior Court jury found Tymes guilty as charged.

(2)    The Superior Court sentenced Tymes on the Burglary Second Degree charge to five years Level 5, Key Program, with credit for 58 days previously served, suspended after three years for two years of Level 4 Crest, suspended after successful completion, for 18 months Level 3.  On each of the two Theft Charges, Conspiracy Second Degree, and Receiving Stolen Property charges, the Superior Court

sentenced Tymes to twelve months Level 5, suspended for twelve months at Level 2. The court imposed a fine for the Criminal Mischief charge.

(3)     Tymes timely filed a notice of appeal on December 15, 2015. After receiving the no-merit brief and motion to withdraw filed under Supreme Court Rule 26(c) by Tymes's former appellate counsel and the State's Answering Brief, this Court granted his former counsel's motion to withdraw, appointed new counsel, and issued a new brief schedule.

(4)     In this appeal, Tymes contends that: "The trial court committed reversible error by giving a constitutionally defective instruction to the jury on the rebuttable presumption of possession of recently stolen goods. The instruction informed the jury that it could make an inference that Mr. Tymes committed burglary and theft because he possessed recently stolen goods. The jury was also instructed that they could make such an inference if they found that Mr. Tymes's possession of the goods was unexplained or they were unsatisfied by his explanation. The charge as given to the jury shifted the burden to the defense as it failed to instruct the jury that Mr. Tymes had no duty to present evidence in his own defense."

(5)     We have concluded that Tymes's argument is without merit.

(6)     Testimony at trial established the following facts. Raymond Seigfried, who at the time of the incident was 65 years old, resided in North Wilmington. On August 25, 2014, Seigfried left his home at approximately 12:10 p.m. to go to an

2

event for work. When Seigfried returned home at approximately 2:30 p.m., he noticed that his door was not locked. As he walked into his house, he received a phone call. Seigfried answered the call, and the unknown caller told him "I think I have your briefcase."

(7)     As Seigfried entered his house and went upstairs to his computer room, he found that the room had been ransacked and that his laptop computer, work briefcase, and a projector were missing. Seigfried found his bedroom in similar disarray. His personal briefcase, another laptop computer, his wife's medication, a video recorder, and some coins were missing. Seigfried called 911, and Master Corporal Jeffrey Steinberg responded shortly thereafter. Seigfried and Master Corporal Steinberg surveyed the house and discovered a damaged screen and a basement window that had been kicked in.

(8)     Master Corporal Steinberg determined that the call Seigfried received about his briefcase came from a convenience store on Northeast Boulevard in Wilmington. The officer went to the store, and a store employee gave him Seigfried's briefcase. The store manager also allowed Master Corporal Steinberg to review the store's video surveillance system. In the video, Master Corporal Steinberg observed what appeared to be a Honda vehicle pull into the convenience store parking lot. An individual exited the passenger side of the vehicle holding what appeared to be a briefcase and then put the briefcase in a dumpster on the side

3

of the store. The video also showed the driver exit the vehicle, carrying what appeared to be a laptop computer. The driver then entered the store, approached the clerk, and gave him the laptop, which the clerk then returned to the driver. The driver then left the store and got back into the vehicle. The timestamp on the video was 1:02:43 p.m., although it was determined that the timestamp was off by about twenty-five minutes. Master Corporal Steinberg testified that the actual time of the video would be 1:37 p.m.

(9) That same day, between 1:00 and 2:00 p.m., Helen Ohlson was riding her bicycle near Seigfried's home. Ohlson testified that she observed two sedans: one was silver and looked older with "messed up paint"; the other was a newer looking, "shiny, bright blue" vehicle. The two sedans appeared to be speeding and driving together. Ohlson testified that the driver of the silver vehicle appeared to be a younger and bigger man and was possibly wearing a white t-shirt, and the passenger appeared to be an older, thinner man. The driver of the blue vehicle was a woman. All three individuals were black.

(10) Detective Cunningham of the New Castle County Police Department, who had been assigned to investigate the burglary, testified that he also observed the video footage from the convenience store. He saw a black male dressed in khaki shorts and another black male dressed in a white t-shirt. Detective Cunningham

4

performed an inquiry on the vehicle, which, it was determined, was a silver 2008 Honda Accord.

(11) As a result of this inquiry, the police identified Chandelier Hagler, Tymes's girlfriend, as the owner of the vehicle. The police ran the vehicle through a database of vehicles with prior police contact. Master Corporal Steinberg testified that the database contained photographs, from which he was able to pull a photograph of Tymes and match it to the video surveillance. Because Tymes has a distinctive tattoo in the middle of his forehead, Master Corporal Steinberg could easily verify the photo.

(12) The police then conducted surveillance of Hagler's residence and the silver Honda. On August 27, 2014, two days after the burglary, the police found Tymes in the vehicle. The police also found Datwan Lum, who was wearing the same clothing as the individual in the security video the day of the burglary. Tymes was taken into custody, and Lum was taken into custody after a brief foot pursuit.

(13) Officers discovered that Tymes was in possession of the stolen laptops. Tymes told the police that he had purchased one of the laptops somewhere near Rodney Square in Wilmington. At trial, Detective Cunningham identified Tymes and Lum in the courtroom and also identified Tymes as having the distinct facial tattoo from the video surveillance.

(14)   On appeal, Tymes claims that the trial judge's jury instruction with respect to his possession of the stolen property amounts to reversible error.  Tymes argues that the instruction was "inconsistent" with the model instruction suggested by this Court in *Hall v. State*.[1]  Although the instruction was almost verbatim to the *Hall* model instruction, Tymes argues that the trial judge committed reversible error by not adding to the instruction a statement that Tymes had no duty to present evidence at all.  Tymes takes issue with the trial judge's instruction that his possession of stolen goods could be explained "by other circumstances shown by the evidence independent of any testimony by the defendants' themselves."  Tymes argues that this wording leaves open the possibility that a reasonable juror would think that a satisfactory explanation must come from evidence presented by the defendant, effectively shifting the burden of proof.

(15)   The concern Tymes expresses on appeal was addressed over thirty years ago by this Court in *Hall*.  In *Hall*, this Court recognized the problem with the then-existing jury instruction.  The instruction at that time provided, in part:

> It is a principle of law in this State that when recently stolen property is found in the possession of a person, that person may be presumed by the jury to be the one who stole it.  On the other hand, the possession may be explained to the satisfaction of the jury, and the presumption of possession may be effectively rebutted.[2]

---

[1] 473 A.2d 352 (Del. 1984).
[2] *Id.* at 354.

6

This Court noted that the instruction could have been interpreted to mean that an individual found in possession of recently stolen goods is presumed to be the thief unless he personally rebuts the presumption.[3] This Court suggested a new instruction, which allows for an "inference" rather than a rebuttable presumption.[4] The *Hall* model instruction also emphasized that the defendant "is not required to take the witness stand or furnish an explanation. His possession may be satisfactorily explained by other circumstances shown by the evidence independent of any testimony by the defendant himself."[5]

(16) The instruction given at Tymes's trial was almost verbatim to the instruction suggested by this Court in *Hall*. The *Hall* model instruction is based, in turn, on the model instruction given by the D.C. Circuit Court of appeals in *Pendegrast v. United States*.[6] No case has held that this instruction is unconstitutional, and Delaware courts have not questioned the validity of the *Hall* model instruction.[7] "The *Hall* draft instruction clearly satisfies due process. [That] issue . . . is clearly controlled by settled Delaware law."[8]

---

[3] *Id.* at 355. ("[The existing charge] does leave open the danger that it might be understood to shift the burden of proof to defendant because it fails to say that defendant has no duty to testify or to present evidence, and it does not specially state that possession of recently stolen goods may be explained by evidence other than defendant's own testimony.").

[4] *Id.* at 357.

[5] *Hall*, 473 A.2d at 357.

[6] *Id.*

[7] *Sellman v. State*, 2002 WL 31007526, at *1 (Del. Supr. Sept. 4, 2002).

[8] *Hammond v. State*, 1986 WL 16312, at *1 (Del. Supr. Feb. 14, 1986).

7

(17)   A presumption instruction, such as the one at issue here, does not violate due process as long as it meets two requirements.  First, the instruction must be phrased to elicit an inference, such that it does not shift the burden of proof or production.[9]  Second, those inferences must be permissive and not mandatory.[10]  The instruction here satisfies both elements.  The instruction tells the jury:

> You are not required to draw any conclusion from [the possession of recently stolen property], but you are permitted to infer from the defendant's possession, if you find it to be unexplained or unsatisfactorily explained by the evidence presented, that the defendant is guilty of the offence, provided that in your judgment such an inference is warranted by the evidence as whole.[11]

The effect of an inference as explained in a jury instruction must be tested by the way a reasonable juror could have interpreted the charge.[12]  Here, as Delaware courts have previously noted, a reasonable juror would have understood that the fact that Tymes possessed stolen property gave rise to no more than a permissible inference that he stole that property.[13]

(18)   Tymes's appeal fails upon a close reading of the jury instruction.  The instruction specifically provides, in relevant part:

> . . . You are not required to draw any conclusion from that circumstance, but you are permitted to infer from the defendants' possession, if you find it to be unexplained or unsatisfactorily explained

---

[9] *Hall*, 473 A.2d at 355.

[10] *Id.* (holding that the instruction must "clearly explain[] that the presumption is actually no more than a permissible inference").

[11] A288.

[12] *Sandstrom v. Montana*, 442 U.S. 510, 514 (1979); *Hall*, 473 A.2d at 355.

[13] *See Sellman*, 2002 WL 31007526, at *1.

8

by the evidence presented, that the defendant is guilty of the offense, provided that in your judgment such an inference is warranted by the evidence as a whole.

. . . If you find that the State has proved beyond a reasonable doubt every element of that offense but has not shown that the defendants took part in the offense except by his possession of stolen property, the defendants' possession of the recently stolen property is a circumstance from which you may find, by the process of inference, that the defendants—that the defendant was the person or one of the persons who stole it.

. . . In considering whether the defendants' possession of the recently stolen property has been satisfactorily explained, you must bear in mind that defendants are not required to take the witness stand to furnish an explanation. His possession may be satisfactorily explained by other circumstances shown by the evidence independent of any testimony by the defendants themselves.[14]

The trial court judge followed the *Hall* model and correctly instructed the jury that they could draw an inference from Tymes's possession of the recently stolen laptops. The judge also correctly explained that Tymes was not required to testify to explain his possession.

(19) This Court's standard of review of a jury instruction is whether the instruction, considered as a whole, correctly stated the law.[15] The instruction given by the Superior Court was nearly identical to the *Hall* model instruction, which has never been invalidated and has been used consistently by Delaware trial courts. Therefore, the instruction correctly stated the law.

---

[14] A288–90.

[15] *Claudio v. State*, 585 A.2d 1278, 1282 (Del. 1991); *Sheeran v. State*, 526 A.2d 886, 894 (Del. 1987) ("A defendant is entitled to a jury instruction that contains a correct statement of the law.").

NOW, THEREFORE, IT IS HEREBY ORDERED that the Superior Court's judgment of convictions is AFFIRMED.

BY THE COURT:

_____
Justice