**Rod A. SIVERTSEN, Petitioner,**

v.

**STATE of Alaska, Respondent.**

No. S–8832.

Supreme Court of Alaska.

June 11, 1999.

Rehearing Denied July 19, 1999.

Phillip M. Pallenberg, Assistant Public Defender, Juneau, and Barbara K. Brink, Public Defender, Anchorage, for Petitioner.

John A. Scukanec, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Respondent.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

PER CURIAM.

This petition for hearing requires us to decide whether the prosecution impermissibly shifts the burden of proving its case beyond a reasonable doubt by arguing to the jury that it can "assume" that the defendant intended his acts. Although we conclude that the prosecutor's statement was objectionable, we also conclude that any error in allowing the statement was harmless given the court's instructions and the weight of evidence against the defendant.

A jury convicted Rod Sivertsen of second-degree burglary and theft. Police observed Sivertsen through a window in the Merchant's Wharf, a Juneau shopping and office complex, at two in the morning. When he could not use a door to exit, Sivertsen broke a window and climbed out with a hammer in his hand. When they searched Sivertsen, police found on his person a putty knife and $600, the amount of money missing from Cruise Line Agencies of Alaska, one of the businesses in the building.

■ During closing argument, the prosecutor stated that the jury could assume from Sivertsen's actions that Sivertsen intended to commit a burglary:

Now [I] have to prove that he did so with the intent to commit a crime. The court read you the instruction on what's called state of mind and I'm not going to go over all the instructions. All I want you to do is read the packet, apply the law. I'm not going to read the whole intent state of mind instruction but state of mind may be proven by circumstantial evidence.

(indiscernible)go on. There can be no eyewitnesses to the state of mind with which acts are done or omitted, but what a defendant does or fails to do may indicate the defendant's state of mind.

The point is we don't have some way of getting in somebody's head, but what we all do, we usually are assumed to intend to do. I intended to hit the hammer and hit the desk there. You can assume I intended to do that, you saw me do it. He intended to burglarize Cruise Line Agencies of Alaska, he kicked the door.

The superior court overruled Sivertsen's objection to this argument and denied his motion for a mistrial.

Sivertsen appealed, contending among other things that the prosecutor's comment violated the rule of *Sandstrom v. Montana,*[1] in which the United States Supreme Court held that it was a violation of due process to instruct a jury that the law presumes that a person intends the ordinary consequences of voluntary acts.[2] The court of appeals affirmed Sivertsen's conviction, holding that the prosecutor's comment simply "informed the jury that they were permitted to infer Sivertsen's intent from his conduct." 963 P.2d at 1073. The court of appeals also noted that the superior court gave an appropriate instruction that confirmed that the jury was permitted to draw inferences from Sivertsen's conduct. 963 P.2d at 1073.

■ We believe the prosecutor's message in this case could be understood to have a meaning similar to the instruction found unconstitutional in *Sandstrom.* The instruction at issue in *Sandstrom* informed the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts."[3] The Supreme Court, noting that "presume" is commonly defined as "to suppose to be true without proof,"[4] held that this language created an unconstitutional risk that the jury would understand the instruction to be either a burden-shifting presump-

---

1. 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

2. *See id.* at 523, 99 S.Ct. 2450.

3. *Id.* at 515, 99 S.Ct. 2450.

4. *Id.* at 517, 99 S.Ct. 2450 (citing *Webster's New Collegiate Dictionary* 911 (1974)).

tion or a conclusive presumption.[5] In other words, the prosecution bears the burden of proving every element of the crime charged, including intent in the case of a specific-intent crime. To say that the law "presumes" intent from conduct might incorrectly indicate to a jury that the defense bears the burden of disproving intent once the conduct is shown.

Although the prosecutor in this case used the words "you can assume" rather than "the law presumes," the two are functionally equivalent in this context. The words "presume" and "assume" are not identical, but dictionaries routinely use "assume" to describe the definition of "presume."[6] Bryan Garner in *A Dictionary of Modern Legal Usage*[7] lists "presume" and "assume" together but notes that the two can have different legal meanings depending on their usage:

> The connotative distinction between these words is that *presumptions* are more strongly inferential and more probably authoritative than mere *assumptions* which are usually more hypothetical....
>
> Presumptions *lead* to decisions, whereas *assumptions* do not.... The phrase *we assume, without deciding,* is a favorite of common-law courts.[8]

Here, the prosecutor's purpose in using "assume" was not to ask the jurors merely to hypothesize, nor was it to suggest that they refrain from actually reaching a decision based on the assumption. On the contrary, the phrase "you can assume," when addressed to a jury about to deliberate and reach a verdict, sounds more authoritative than hypothetical.

Criminal law is an area in which the precise use of language is particularly important. For example, in dealing with presumptions against the accused in criminal cases, the Alaska Rules of Evidence go to extraordinary lengths to command avoidance of the word "presumption" and to prescribe, instead, use of the word "infer."[9] We agree with Sivertsen that telling jurors "you can assume"—the phrase at issue in the prosecutor's closing argument—is perilously close to telling them "the law presumes"—the offensive phrase in *Sandstrom*. And it does not seem accurate to say, as the court of appeals did, that the argument "mirrored" the superior court's instruction. 963 P.2d at 1073. The instruction—unquestionably a correct statement of the law—makes absolutely no reference to assumptions or even to inferences.[10] Indeed, this standard instruction was crafted to eliminate all such references for the express purpose of eliminating *Sandstrom* problems.

On the other hand, one cannot expect a lawyer's oral summation to reach the same level of linguistic precision as written instruc-

---

5. *See Sandstrom*, 442 U.S. at 524, 99 S.Ct. 2450.

6. *See, e.g., New Shorter Oxford English Dictionary*, 133, 2345 (defining "assume" as "[t]ake for granted; take as being true, for the sake of argument or action; suppose" and "presume" as "assume to be true or (law) proved in the absence of evidence to the contrary"); Petition at 12 (citing *Webster's New Collegiate Dictionary* (2d College Ed.)) (noting that "assume" means "to take for granted: suppose [something] to be a fact" and "presume" means "to take for granted: accepted as true lacking proof to the contrary; assume, suppose").

7. Bryan A. Garner, *A Dictionary of Modern Legal Usage* (2d ed.1995).

8. *Id.* at 84.

9. *See* Alaska R. Evid. 303(a):

 [I]f the accused fails to offer evidence to rebut or meet the presumption, the court must instruct the jury that it may, but is not required to, infer the existence of the presumed fact from the proved fact, but no mention of the word "presumption" shall be made to the jury.

10. The state-of-mind instruction given by Judge Weeks was identical to the "Proof of Intent—Circumstantial Evidence" instruction recommended by Alaska Pattern Jury Instruction 1.44 (Criminal):

 State of mind may be proved by circumstantial evidence. It rarely can be established by any other means. While witnesses may see and hear and thus be able to give direct evidence of what a defendant does or fails to do, there can be no eyewitness to the state of mind with which the acts were done or omitted. But what a defendant does or fails to do *may indicate* the defendant's state of mind.

 In determining issues of state of mind, *the jury is entitled to consider* any statements made or acts done or omitted by the accused, and all facts and circumstances in evidence which may aid determination of state of mind. (Emphasis added.)

tions from the court. And fine shades of meaning in oral arguments are apt to be lost, whereas critical distinctions are more likely to be conveyed by written jury instructions, which are both read and given to the jury for reference. Moreover, the prosecutor's argument cannot reasonably be read as a call to the jury to find that intent existed without the required proof of that intent. Instead, he argued that intent may be proven by circumstantial evidence and that a defendant's acts or omissions may indicate state of mind. Thus, the mistake was in using forms of the word "assume" rather than forms of the word "infer." But the example that the prosecutor gave conveyed the sense of "infer" rather than "assume": "I intended to hit the hammer and hit the desk there. You can assume I intended to do that, you saw me do it."

The State bears the burden of proving every element of the crime charged beyond a reasonable doubt. In the case of a specific-intent crime, the jury is permitted to infer intent from circumstantial evidence such as conduct, but it is still the function of the jury to decide whether the prosecution has ultimately met its burden of proof. This element of active decision making is precisely what distinguishes an inference from an assumption or presumption.[11] By informing the jury that it can "assume" or "presume" intent from evidence of conduct, the prosecutor creates a risk that the jurors will think that the evidence of conduct is automatically sufficient to prove intent, either conclusively or presumptively, without the jury actually making that determination.

 In the present case there is no reasonable possibility that this risk contributed to the guilty verdict. Although the prosecutor used the word "assume" rather than the word "infer," in context it was clear that he was asking the jury to find intent by inference from the defendant's actions. Furthermore, the court's instructions were clear on

this point. And, as the court of appeals observed, the evidence against the defendant was strong. 963 P.2d at 1071. Sivertsen does not dispute this observation. We therefore conclude that the trial court's failure to sustain the objection to the prosecutor's argument was harmless error under Alaska Criminal Rule 47(a).

Because we agree with Sivertsen that "assume" is more like the prohibited "presume" than it is like the permissible "infer", we GRANT the petition for hearing and DISAPPROVE of the court of appeals's holding that the prosecutor's argument did not constitute error but conclude that this error was harmless.

EASTAUGH, Justice, concurring.

I agree with the result the court reaches today, because it has the effect of affirming Sivertsen's judgment and conviction. But I disagree with the court's analysis.

The court reasons that the words "you can assume" are "functionally equivalent in this context" to the words "the law presumes."[1] But the authorities the court discusses distinguish between "assume" and "presume," and assign them different meanings and connotations. I agree that a prosecutor who asks a jury to "presume" facts relevant to guilt invites error, and that asking a jury to "assume" a relevant fact may be "perilously close" to inviting error.[2] But I think that a prosecutor's use of "assume" in a manner consistent with its proper meaning is not error.

Prosecutors must take care to avoid arguments which infringe, even unintentionally, on defendants' rights. A prosecutor's comments must be assessed contextually when their propriety is attacked. Absent a contextual implication that the defendant must produce evidence of innocence, I would not find error when a jury is asked to "assume" something. In context, the usage in this case

---

11. For example, *Black's Law Dictionary* defines "inference" as "[a] conclusion reached by considering other facts and deducing a logical consequence from them." In contrast, *Black's* defines "presumption" as "[a] factual or legal assumption drawn from the existence of another fact or group of facts," and "assumption" as "[a] fact or

statement taken for granted; a supposition." *Id.* (pocket ed.1996).

1. Op. at 566.

2. Op. at 566.

was not inappropriate. The court correctly concludes that the prosecutor's words were harmless.[3] I would go further: it was not error to utter them.