# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 10, 2007

## STATE OF TENNESSEE v. MICHAEL DAVIS

**Appeal from the Criminal Court for Shelby County**
**No. 03-04293    W. Otis Higgs, Judge**

---

**No. W2006-01151-CCA-R3-CD  - Filed August 3, 2007**

---

The Appellant, Michael Davis, was convicted by a Shelby County jury of especially aggravated robbery and sentenced to twenty-five years in the Department of Correction. On appeal, Davis raises two issues for our review: (1) whether the trial court erred in instructing the jury with regard to criminal responsibility for the conduct of another; and (2) whether the evidence is sufficient to support the conviction. Following review of the record, we find no error and affirm the judgment of conviction.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Coleman W. Garrett, Memphis, Tennessee, for the Appellant, Michael Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience Branham, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

At approximately 7:00 a.m. on January 17, 2003, the victim, Tony Saulsberry, arrived at his family's business, Ron's Coin-op Laundry, located at Lamar and Sims in Memphis, where he worked as an attendant. Upon arrival, he parked his 1995 Crown Victoria near the door of the business and proceeded inside. While the victim was inside the office area, he noticed four or five men enter the building, each armed with a handgun and wearing a mask. As the men approached, the victim was ordered to get down on the floor. While on the floor, one of the men struck the victim in the head with a gun, causing a wound which later required six to ten stitches to close. The assailants then used duct tape to bind the victim's arms behind his back and to blindfold him, and they removed his watch, ring, and necklace. The assailants proceeded to ask the victim about any surveillance cameras

and cash in the store. The victim explained that there were no cameras in the store and that he had no money as he was just opening the laundromat. At this point, he was picked up off the floor by his assailants and escorted outside, where he was placed in the backseat of a pickup truck. At least two of the men entered the cab of the truck with the blindfolded victim.

Once inside the truck, one of the men placed a pistol on the victim's upper leg and shot him. The assailant then reached into the victim's pockets and took his car keys, wallet, and approximately $600 in cash. After the shooting, one of the assailants told the victim that he should now know that they "ain't playing." The victim was also informed that they were going to kill him if he did not give them what they wanted. The truck made two stops while the victim was held captive, and, at each stop, the victim heard the two assailants in the truck speaking with others. On one occasion, he heard one of the men tell someone, "here are the car keys right here." The second time the truck stopped, the victim was shoved out of the truck. Once outside, the victim was able to remove the tape from his eyes and arms. Although in pain, the victim "limped [and] crawled" to a nearby elementary school, where police were called. The victim was unable to identify his assailants because, even prior to his being blindfolded, the assailants wore masks and used devices to disguise their voices.

Prior to 8:30 a.m. on the day of the robbery, the victim's brother, Ronald Saulsberry, stopped by the laundromat for a short visit. However, when he arrived, the only person present in the laundromat was a customer doing her laundry. Although the victim was not present, Saulsberry noticed that his car was still parked in the lot. He observed specks of blood on the floor of the laundromat and called his father, who called the police. After getting off the phone, Saulsberry looked out the laundromat window and observed the Appellant getting out of a Ford Taurus. Saulsberry was acquainted with the Appellant because they were from the same neighborhood and because Saulsberry had, in years prior, dated the Appellant's sister. Saulsberry was unable to identify the driver of the Ford Taurus. Saulsberry observed that the Appellant had the victim's car keys in his hand, and he watched as the Appellant unlocked the victim's car, got inside, backed up, and drove off.

Lt. William Woodard of the Memphis Police Department was assigned to the investigation of the laundromat crimes. The Appellant was developed as a suspect after Ronald Saulsberry informed police that the Appellant had taken the victim's car. Saulsberry later identified the Appellant in a photo lineup as the person who had taken the car. Around the same time, Woodard was informed by the police auto theft bureau that a truck, stolen from Southhaven, Mississippi, had been recovered in south Memphis. Inside the cab, police found blood in the back seat, a ski mask, a bloody towel, and a Mississippi drive-out tag. Additionally, affixed to the rear of the truck was a Tennessee dealer's license plate, which the owner of the truck stated was not with the truck when it was stolen. Woodard checked the dealer's tag number and discovered that, although it was now

expired,[1] the Appellant had been issued a ticket in a vehicle while driving a white Mercury with the same dealer's tag number in November of the previous year. Additionally, following DNA testing, it was determined that the blood on the towel found in the truck matched that of the victim's.

On June 26, 2003, a Shelby County grand jury returned a two-count indictment charging the Appellant with especially aggravated kidnapping and especially aggravated robbery. Following a January 12, 2006 jury trial, the Appellant was acquitted of the kidnapping charge but convicted of the especially aggravated robbery and subsequently sentenced, as a Range II offender, to twenty-five years imprisonment. Following the denial of his motion for new trial, the Appellant filed the instant timely appeal.

## Analysis

### I. Jury Instruction on Criminal Responsibility

On appeal, the Appellant asserts that the trial court erred in instructing the jury on criminal responsibility for the conduct of another. He argues that, based upon a lack of evidence of a knowing connection between the Appellant and the individuals who committed the crime, the charge was not warranted by the proof. The Appellant contends that there was no proof, either direct or circumstantial, that he personally participated in the robbery, that he planned or assisted in planning the robbery, that he knew the individuals who committed the robbery, or that he even knew that a robbery had been committed.[2]

A trial court has the duty, in criminal cases, to fully instruct the jury on the general principles of law relevant to the issues raised by the evidence. In other words, the court must instruct the jury on those principles closely and openly connected with the facts before the court and which are necessary for the jury's understanding of the case. *State v. Elder*, 982 S.W.2d 871, 876 (Tenn. Crim. App. 1998). Jury instructions must, however, be viewed in the context of the overall charge rather than in isolation. *Sandstrom v. Montana*, 442 U.S. 510, 527, 99 S. Ct. 2450, 2461 (1979). A charge is prejudicial error only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). Because questions of the propriety of jury instructions are mixed questions of law and fact, the standard of review is *de novo* with no presumption of correctness. *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

"[C]riminal responsibility is not a separate, distinct crime. It is solely a theory by which the State may prove the defendant's guilt of the alleged offenses . . . based upon the conduct of another." *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999). "A person is criminally responsible for an offense committed by the conduct of another if [a]cting with intent to promote or assist the

---

[1] Lt. Woodard explained that a dealer's tag is used for commercial purposes and is registered to a business, not to a particular vehicle. Because this tag had been expired so long, it was "no longer on file."

[2] The record does not reflect that the Appellant objected to the inclusion of the charge regarding criminal responsibility. Normally, waiver would be the result of such omission. However, we elect review of the issue.

commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." T.C.A. § 39-11-402(2) (2006). Furthermore, under a theory of criminal responsibility, an individual's presence and companionship with the perpetrator of a felony before and after the commission of an offense are circumstances from which his or her participation in the crime may be inferred. *State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown, and the defendant need not have taken a physical part in the crime in order to be held criminally responsible. *Id.* To be criminally responsible for the acts of another, the defendant must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting *Hembree v. State*, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). The defendant must "knowingly, voluntarily and with common intent unite with the principal offenders in the commission of the crime." *State v. Foster*, 775 S.W.2d 846, 848 (Tenn. Crim. App. 1988).

Following review of the record, we conclude that criminal responsibility, based upon the conduct of another, was clearly raised by the proof as a basis for criminal liability. The record establishes that four or five masked and armed men entered the laundromat and proceeded to intimidate, beat, shoot, and rob the victim. It is abundantly clear that, during the course of the especially aggravated robbery, the Appellant had associated himself with those in the criminal venture because he was in possession of the recently stolen keys to the victim's car and because he "benefit[ed] in the proceeds or results of the offense." His association is further evidenced by the fact that the Tennessee dealer's license plate affixed to the truck used in the commission of this crime was previously affixed to an automobile driven by the Appellant two months earlier. Contrary to the Appellant's argument, proof that the Appellant "planned or assisted in planning the robbery" is not required to establish criminal responsibility when based upon the conduct of another. Again, proof is required only to establish that the Appellant acted with intent to promote or assist the commission of the offenses or to benefit in the proceeds. The Appellant's argument that the evidence fails to establish that he "personally participated in any facet" of the especially aggravated robbery is belied by the evidence in the record. In view of the proof at trial, a jury instruction based upon criminal responsibility for the conduct of another was clearly warranted. This issue is without merit.

## II. Sufficiency of the Evidence

The Appellant further argues that the evidence in the record is insufficient to support his conviction. First, he asserts that the verdict is inconsistent with the jury's verdict acquitting him of especially aggravated kidnapping, arguing that there is no more evidence that he committed the robbery in the record than that he committed the kidnapping. Additionally, he argues that the conviction, based entirely upon circumstantial evidence, must fall because the State failed to prove that he took the property from the victim by violence or putting the victim in fear or that the Appellant accomplished the act with a deadly weapon.

In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Although a conviction may be based entirely upon circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1974), in such cases, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991) (citing *State v. Duncan*, 698 S.W.2d 63 (Tenn. 1985)). However, as in the case of direct evidence, the weight to be given circumstantial evidence and "the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted).

Especially aggravated robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" which is "(1) Accomplished with a deadly weapon; and (2) Where the victim suffers serious bodily injury." T.C.A. § 39-13-401, -403(a)(1)-(2) (2006). "Deadly weapon" means "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury[.]" T.C.A. § 39-11-106(a)(5).

The Appellant first urges us to hold that the evidence is insufficient to support his especially aggravated robbery conviction because that verdict is "reversibly inconsistent" with the jury's finding that he was not guilty of especially aggravated kidnapping. According to the Appellant, "[c]onsidering the fact that there is no more evidence in this record to support a conviction for especially aggravated robbery than there is to support a conviction for kidnapping, these inconsistent findings cannot be reconciled." The Appellant acknowledges our supreme court's holding in *Wiggins v. State*, 498 S.W.2d 92, 93-94 (Tenn. 1973), which held that consistency of verdicts for multiple count indictments is unnecessary, but he argues that "when there is such a glaring, irrational

inconsistency, as in this case, the reviewing court may properly consider the jury's findings somewhat suspect and therefore, be more cautious in applying the presumption of reasonableness of the inferences drawn in reaching a verdict." However, case law is clear that this court may "not upset a seemingly inconsistent verdict by speculation as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense [for] which the conviction was returned." *Wiggins*, 498 S.W.2d at 93-96. Accordingly, the Appellant's inconsistent jury verdict argument is rejected.

With regard to the Appellant's argument that the evidence presented is insufficient to support the conviction, he asserts that all of the evidence against him was "purely circumstantial." While not disputing that the victim was in fact held at gunpoint, robbed, hit in the head, kidnapped, and shot, the Appellant asserts that there is no proof placing him at the scene during the commission of the offense, no proof that he ever employed a weapon, no direct proof to connect him to the truck used in the kidnapping, and no proof that he was involved in planning the crimes. He acknowledges that the evidence, in the light most favorable to the State, does establish that he knowingly exercised control over the victim's car, without the victim's effective consent, and that he intended to deprive the victim of the property. However, he asserts that the evidence fails to show that he took the property by violence or by putting the victim in fear or that he accomplished the act with a deadly weapon.

It is undisputed that four or five armed men encountered the victim and took his property from him, by violence and through the use of a deadly weapon, and that during the robbery, the victim sustained serious bodily injury as a result of a gunshot wound and a pistol beating from one or more of the assailants. *See* T.C.A. § 39-11-106(a)(5). This State's penal code affirms the fundamental principle that a person is liable for his own conduct, for the conduct of another for which he may be held accountable, or for a combination of both. If the person is criminally liable for the conduct of another, it is immaterial whether the person's own conduct, or the conduct of the other for which he is accountable, or both in combination, establish the elements of the crime. Thus, because the State prosecuted under the theory of criminal responsibility for another, it was unnecessary to prove that the Appellant possessed a weapon during the commission of the robbery, that he perpetrated violence, that he physically removed property from the victim, or that he inflicted the serious bodily injury. The State was, however, required to establish that the Appellant, "acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or result of the offense, solicit[ed], direct[ed], aid[ed], or attempt[ed] to aid another person to commit the offense." *See* T.C.A. § 39-11-402(2).

We have concluded *supra* that the proof permits the finding that the Appellant associated himself with others in the criminal venture for which he was convicted. Moreover, the proof would permit a rational jury to conclude that the Appellant acted with the intent to promote or assist the commission of the offense and that he benefitted in the proceeds. The Appellant's direct contact in the crime is established by his possession of the victim's stolen car keys and his taking of the victim's vehicle from the laundromat. Accordingly, we conclude that the evidence of his conduct and the conduct of others for which he was criminally responsible, both circumstantial and direct,

and the inferences which rationally could be drawn from such evidence were sufficient to permit a jury to find the Appellant guilty of especially aggravated robbery.

## CONCLUSION

Based upon the foregoing, the Appellant's conviction for especially aggravated robbery is affirmed.

_____

DAVID G. HAYES, JUDGE