# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### January 9, 2007 Session

## STATE OF TENNESSEE v. DIMECOS JONES

**Appeal from the Criminal Court for Shelby County**
**No. 04-03180      Chris Craft, Judge**

**No. W2006-00237-CCA-R3-CD  - Filed July 3, 2007**

The Appellant, Dimecos Jones, was convicted by a Shelby County jury of first degree premeditated murder and sentenced to life imprisonment. On appeal, Jones raises two issues for our review: (1) whether the evidence is sufficient to support the conviction; and (2) whether the trial court erred by failing to instruct the jury on "defense of a third person." Following review, we find no error and affirm the judgment of conviction.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

Larry E. Copeland and Joseph S. Ozment, Memphis, Tennessee, for the Appellant, Dimecos Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; James Wax and Michelle Parks, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

The Appellant's conviction stems from his involvement in the shooting death of the victim, Kaman Perkins, which arose from a dispute over drug territory. At the time of his death, the twenty-two-year-old victim was a Gangster Disciple member and was involved in the sale of drugs in the Corner Apartments complex in Memphis. Hostilities developed between the victim and Christen Williams, a resident of the apartment complex, who was also selling drugs in the complex. To resolve the dispute, Williams met with Mario Green, the Appellant's roommate and cousin, at the residence of Green and the Appellant. Williams stated that she approached Green for help because he outranked the victim in the Gangster Disciples. Williams and Green discussed a plan to approach the victim and resolve the dispute, and, although the Appellant was present, he was neither involved in the planning nor a party to the conversation. Williams explained that the victim was upset with

her because "[t]he crackheads had started coming to [her] instead of [the victim]" to purchase their drugs. Williams stated that the victim had threatened to kill her on more than one occasion. Prior to their departure from the residence, Green asked the Appellant if he was "going to ride with" them and told the Appellant to "strap up" before giving him "a nine[millimeter]" pistol.

The three proceeded to the Corner Apartments so Green "could jump on" the victim. They arrived and spotted the victim in his car but had to leave so that Williams could complete a drug transaction at a local restaurant. Upon their return to the apartment complex, the victim and a male passenger were spotted in the victim's burgundy Cadillac Eldorado. Green instructed Williams, who was driving the car, to park behind the apartments and wait while he and the Appellant spoke with the victim. Both the Appellant and Green were armed when they exited the car, with the Appellant carrying a .9mm pistol and Green carrying a .357 revolver.

According to Marcus Tubbs, the passenger in the victim's car, the victim was entering the Corner Apartments to collect money owed to him when they were "flagged down" by Green and the Appellant. The two men approached the car and spoke with the victim through the window. Tubbs was not initially paying attention to the conversation, but he could hear that it involved Christen Williams and that the conversation eventually became more hostile. At one point, Tubbs saw the Appellant pull a .9mm pistol and say "Drop it off, get out of the car." The victim, who was not armed, followed the Appellant's instructions and got out of the car, lying face down on the parking lot. Green also pulled his pistol and ordered Tubbs to get out of the car, taking his cell phone. While Tubbs was held at gunpoint by Green on the passenger side of the car, the Appellant searched the victim's pockets and removed his shoes. The Appellant and Green then met at the front of the car, and Tubbs heard the Appellant ask Green, "Should I do him, should I do him?" Tubbs did not hear Green's response but saw the Appellant walk over to the victim and shoot him in the back of the head. The Appellant and Green then ran from the scene. The Appellant, now carrying the .357 revolver, returned to Williams' car, while Green got in a separate car. The Appellant informed Williams that "[h]e took care of that."

Later that morning, the police went to the Appellant and Green's house but received no response to their knocks at the door. Surveillance of the residence was established, and, a short while later, the Appellant was seen exiting the home and getting into a grey car. When police stopped the car, the Appellant was in possession of a .9mm pistol, a .357 magnum revolver, a magazine, bullets, a box of ammunition, and a cell phone. According to the Appellant, he was on his way to dispose of the weapons, per Green's instruction, when he was stopped.

Following his arrest, the Appellant gave a full statement to police investigators admitting that he had shot the victim in the head with the .357 revolver. However, he stated that he did so at the behest of Green who handed him the .357 and whispered "kill him." According to the Appellant, he initially refused to follow Green's instructions but eventually fired the shot because he was afraid.

An autopsy of the victim revealed that the cause of death was a single gunshot wound to the head, which entered the top of the victim's head and exited through his right eye. Forensic evidence

determined that bullet fragments found at the scene had been fired from the .357 magnum found in the Appellant's possession. A forensic anthropologist also examined the victim's skull and determined that, in addition to the gunshot wound, the victim had a second area of trauma to his skull. The second area, caused by blunt force trauma, occurred prior to the gunshot wound.

On May 4, 2004, the Appellant and Green were jointly indicted for the crimes of: (1) premeditated first degree murder; (2) felony murder; and (3) especially aggravated robbery. Williams was charged in count 4 of the indictment with facilitation of a felony. The Appellant's cases were severed from his co-defendants', and, following a jury trial, the Appellant was found guilty of premeditated first degree murder. As provided by law, the Appellant was sentenced to life imprisonment. Following the denial of his motion for new trial, the Appellant filed the instant timely appeal.

## Analysis

On appeal, the Appellant has raised two issues for our review: (1) whether the evidence presented was insufficient to support his conviction, specifically the element of premeditation; and (2) whether the trial court erred by failing to instruct the jury with regard to "defense of a third person."

## I. Sufficiency of the Evidence

First, the Appellant contends that the evidence presented at trial was insufficient to support his first degree murder conviction, specifically the element of premeditation. In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

As noted, the Appellant was convicted of first degree murder, which is defined in relevant part as "[a] premeditated and intentional killing of another[.]" T.C.A. § 39-13-202(a)(1) (2006). Premeditation is an act done after the exercise of reflection and judgment. *Id*. at (d). Premeditation means that the intent to kill must have been formed prior to the act itself; however, it is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. *Id*. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion to be capable of premeditation. *Id*.; *see also State v. Sims*, 45 S.W.3d 1, 8 (Tenn. 2001).

Whether premeditation is present is a question of fact for the jury, and it may be inferred from the circumstances surrounding the commission of the crime. *State v. Berry*, 141 S.W.3d 549, 565-66 (Tenn. 2004); *State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000). Although there is no strict standard governing what constitutes proof of premeditation, several relevant circumstances are helpful, including: the use of a deadly weapon upon an unarmed victim; the fact that the killing was particularly cruel; a declaration by a defendant of his intent to kill; evidence of the procurement of a weapon; the making of preparations before the killing for concealment of the crime; and calmness immediately after the killing. *Suttles*, 30 S.W.3d at 261.

As the Appellant acknowledges, there is no dispute that he shot and killed the victim. His sole contention is that the evidence is insufficient to establish that he did so with premeditation. According to the Appellant's argument, the evidence is insufficient to establish premeditation because the testimony established that Williams recruited Green, not the Appellant, to take care of the dispute between her and the victim, that she never had any discussion about the victim with the Appellant, and that Green was in possession of the weapon, specifically the .357, which was used to kill the victim. He further relies upon the testimony of Tubbs to establish that the argument in the car was between the victim and Green. According to the Appellant, the evidence established that he shot the victim out of fear because Green told him to do so. Moreover, he argues that his state of mind for premeditation was also in question in light of his testimony regarding his consumption of drugs and alcohol earlier in the evening. We find this argument misplaced. The only evidence that he shot the victim out of fear of Green or that he was impaired by drugs or alcohol came from the Appellant's own self-serving testimony, which the jury was free to reject. *See Pappas*, 754 S.W.2d at 623.

The jury was properly instructed with regard to the defenses of duress and intoxication as relied upon by the Appellant at trial. The jury was in the best position to view the witnesses and the evidence and determine, based upon the proof, whether these defenses were established or whether the Appellant acted with premeditation in the killing of the victim. According to the Appellant himself, prior to the encounter with the victim, Green tossed him the .9mm and told him to "strap up." He further admitted that he went with Green "to take care of some business[,]" knowing that Green was a member of the Gangster Disciples. While Tubbs testified that it was Green who was initially arguing with the victim, it was the Appellant who first displayed a weapon and told the victim to "Drop it off, get out of the car." Tubbs was clear in his testimony that the Appellant pulled the weapon out on his own, not at Green's request. When the victim emerged from the vehicle, it

-4-

was the Appellant who made him lie face down on the ground.  While the Appellant did ask Green if he should shoot the victim, Tubbs heard no reply, but he did witness the Appellant approach the victim and shoot him in the back of the head.  Moreover, medical testimony established that the victim suffered a blunt force trauma blow prior to the infliction of the shot.  Additionally, according to Williams, the Appellant was "acting normal" when he returned to the car, and he made the comment that "he took care of that."  Finally, by the Appellant's own testimony, it was established that he was in the process of disposing of the murder weapon when he was arrested by police.

Applying the above established factors to the proof in the light most favorable to the State, we conclude that premeditation could rationally be inferred based upon the facts that: (1) the Appellant used a deadly weapon upon an unarmed victim: (2) the Appellant inflicted multiple wounds; (3) the Appellant attempted to dispose of or secrete evidence, namely the murder weapon; and (4) the Appellant's calmness immediately after the killing.  Accordingly, we conclude that the evidence is legally sufficient to support the jury's verdict of first degree premeditated murder.

## II.  Jury Instruction on Defense of a Third Person

Next, the Appellant contends that the trial court committed error by failing to charge defense of a third person.  According to the Appellant, the jury should have been so instructed because the proof presented established that the victim had previously threatened Christen Williams with death. The Appellant asserts that "[t]he victim was a member of a criminal street gang and his threats were real."  Initially, we are constrained to note that the Appellant failed to request this instruction at trial or to offer a contemporaneous objection to the trial court's final charge, which would normally result in waiver.  *See* Tenn. R. App. P. 36(a).  However, because this issue was raised in the Appellant's motion for new trial and is raised as error on appeal, we elect review of the issue upon its merits.

It is well-settled that the trial court has the duty to give a correct and complete charge of the law applicable to the facts of the case and that the defendant has the right to have every issue of fact raised by the evidence and material to the defense submitted to the jury upon proper instructions by the trial court.  *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990).  This duty includes "giving jury instructions concerning fundamental issues to the defense and essential to a fair trial. . . ." *State v. Anderson*, 985 S.W.2d 9, 17 (Tenn. Crim. App. 1997).  A trial court has the duty, in criminal cases, to fully instruct the jury on the general principles of law relevant to the issues raised by the evidence. In other words, the court must instruct the jury on those principles closely and openly connected with the facts before the court and which are necessary for the jury's understanding of the case.  *State v. Elder*, 982 S.W.2d 871, 876 (Tenn. Crim. App. 1998).  Jury instruction must, however, be viewed in the context of the overall charge rather than in isolation.  *Sandstrom v. Montana*, 442 U.S. 510, 527, 99 S. Ct. 2450, 2461 (1979).  A charge is prejudicial error only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997).  Because questions of the propriety of jury instructions are mixed questions of law and fact, the standard of review is *de novo* with no presumption of correctness.  *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

Pursuant to Tennessee Code Annotated section 39-11-612, a person is justified to act in defense of a third person when:

(1) Under the circumstances as the person reasonably believes them to be, the person would be justified under § 39-11-611 in threatening or using force to protect against the use or attempted use of unlawful force reasonably believed to be threatening the third person sought to be protected; and

(2) The person reasonably believes that the intervention is immediately necessary to protect the third person.

T.C.A. § 39-11-612 (2006). Tennessee Code Annotated section 39-11-611 provides that:

(a) A person is justified in threatening or using force against another person when, and to the degree, the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death of serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. . . .

T.C.A. § 39-11-611(a) (2006). As the Sentencing Commission Comments provide, the defense not only entails what a defendant actually believes but also what is a reasonable belief under the circumstances. *State v. James Albert Bult*, No. 01C01-9711-CC-00534 (Tenn. Crim. App. at Nashville, Sept. 18, 1998).

A defendant is entitled to the issue of the existence of a defense being submitted to the jury when it is fairly raised by the proof presented. T.C.A. § 39-11-203(c) (2006). To determine if it is fairly raised by the proof, "a court must, in effect, consider the evidence in the light most favorable to the defendant, including drawing all reasonable inferences flowing from that evidence." *State v. Shropshire*, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993). This is so because it would be improper for a court to withhold a defense from the jury's consideration because of judicial questioning of any witness credibility. *Id.*

The question now before us is whether the Appellant was entitled to have the jury instructed with regard to defense of a third person. Essentially, we must determine whether the evidence fairly raised the issue of a reasonable belief that "force [wa]s immediately necessary to protect against the [victim's] use or attempted use of unlawful force" and that there was an "imminent danger of death or serious bodily injury" to Williams. *See* T.C.A. § 39-11-611(a), -612.

Reviewing the record before us, in the light most favorable to the Appellant, we conclude that the defense was not raised by the proof. There is absolutely no proof in the record that force by the Appellant was "immediately necessary" under the circumstances or that Williams was in

"imminent danger of death or serious bodily injury." While Williams did offer testimony that the victim had previously threatened her life, no time-frame for these threats was established. On the evening of the murder, following Williams' discussion with Green of her dispute with the victim but prior to going to the apartment complex, Williams, Green, and the Appellant ran errands, including stopping at a Mrs. Winner's restaurant to eat. Moreover, the group initially arrived at the complex and saw the victim but left so that Williams could complete a drug transaction. These actions are not representative of an immediate threat. Additionally, after their return to the complex, it was the Appellant and Green who approached the victim. Finally, at the time the Appellant shot and killed the victim, the victim was unarmed and posed no threat to Williams or to the Appellant.

The Appellant appears to suggest that we should give a greater weight to the fact that the threats were made by the victim, who was a member of a local street gang. However, his argument is misplaced, as the law is clear that the danger must be "imminent" in order to justify the use of force in defense of a third person. Thus, because we conclude that the defense was not raised by the proof, failure to so instruct was not error.

## CONCLUSION

Based upon the foregoing, the Appellant's judgment of conviction is affirmed.

_____
DAVID G. HAYES, JUDGE

-7-